This matter presents a timely appeal from a judgement rendered by the Belmont County Court, Eastern Division, finding defendant-appellant, Timothy J. Scott, guilty of domestic violence in violation of R.C. 2919.25(A).
At the outset, we note that plaintiff-appellee, State of Ohio, has failed to file a brief in this matter. Therefore, pursuant to App. R. 18(C), this court is authorized to accept appellant's statement of the facts and issues as correct and reverse the trial court's judgement if appellant's brief reasonably appears to sustain such action.
On October 10, 1995, appellant and his sister, Jacqueline Scott, attended a party at their father's apartment. (Tr. 2). The other relevant parties also present include James Scott (appellant's father), Rebecca Scott (appellant's sister-in-law), and the sister's boyfriend. (Tr. 2-5). While the group lounged, drinking alcohol, a neighbor entered and began lecturing them about religion and the evils of alcohol and drugs. (Tr. 2). This visit launched a discussion on the topic. Appellant related his views about the issues, causing emotions to escalate. (Tr. 3-5).
Appellant and his sister's boyfriend began arguing with each other, which almost led to violence. (Tr. 26-27). This spurred an argument between appellant and his sister. (Tr. 4-5). As the noise mounted, the landlady came and threatened to evict appellant's father if the group did not silence. (Tr. 4). Appellant and his father then went outside, so that appellant could regain his composure. (Tr. 26). They were outside for some time when appellant's sister came outside to continue the argument. (Tr. 26-27). During the argument, appellant's sister pushed appellant back, as she feared for her safety. (Tr. 5). Appellant's father stepped between them, and appellant reached around him to push his sister, but instead struck her in the nose, thereby causing it to bleed. (Tr. 27). Appellant then left the party, and his sister went to the police station and had photographs of her nose taken. (Tr. 6-7).
Appellant was charged with domestic violence and, during the trial, appellant's sister and sister-in-law testified to his striking his sister in the nose. (Tr. 5, 16). Also, the patrolman who photographed the sister's nose, Everett Yarnevic, and appellant's father testified to seeing the bloody nose. (Tr. 13, 21). Upon direct examination of appellant's sister, appellant's counsel asked her whether she had used another pending charge as a threat against appellant, to escalate the argument. (Tr. 8-9). She then testified about another charge she had against appellant in Monroe County. (Tr. 8-9). Later, the trial court allowed the prosecuting attorney to question appellant, on cross-examination, about the arrest from this previous domestic violence charge in Monroe County. (Tr. 31).
The trial court found appellant guilty of domestic violence and ordered him to serve ten days in jail and pay a fifty dollar fine, as well as continue counseling. The trial court also made a recommendation of a possible revocation of appellant's probation. This appeal followed.
Appellant sets forth two assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The trial court erred in convicting Appellant of a violation of domestic violence without sufficient evidence to prove that Appellant and the victim were family or household members as required under Revised Code 2919.25(A)."
R.C. 2919.25 states in pertinent part:
 "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 "(B) No person shall recklessly cause serious harm to a family or household member.
 "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
 "(D) Whoever violates this section is guilty of domestic violence. * * *
 "(E) As used in this section and sections 2919.251
and 2919.26 of the Revised Code:
 "(1) 'Family or household member' means any of the following:
 "(a) Any of the following who is residing or has resided with the offender:
 "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;"
Appellant first cites Youngstown v. Osso (1996), 115 Ohio App.3d 416, where this court found there was insufficient evidence to show the elements of domestic violence beyond a reasonable doubt. This court reasoned that there was no testimony or evidence to show that there was any actual physical harm to the victim. Osso, supra. Appellant argues that here, as in Osso, there is insufficient evidence to prove the elements of domestic violence.
Appellant next argues that appellee failed to prove the "family or household member" relationship between he and his sister as required under R.C. 2919.25(A). Appellant argues for a narrow definition of "family or household member" in stating that both must be proven in order for there to be a domestic violence violation. Appellant cites Middletown v. Walker
(1995), 107 Ohio App.3d 516, where the court did not find a domestic violence offense, as the defendant and the victim were not shown to be related, and they also did not reside together. Appellant argues that the evidence did not show appellant and his sister are related by consanguinity nor lived together during the time of the incident. Therefore, appellant states that he did not commit domestic violence as this case lacks the requisite relationship under R.C. 2919.25.
Although there was insufficient evidence of domestic violence in Osso, that case is distinguished from the one at bar. InOsso, the defendant came to the victim's house, kicked the side door, screamed, and left before the victim came downstairs. There was no testimony or evidence of any physical harm to the victim. Osso, supra. Here, there is evidence of a physical injury to appellant's sister. Appellant's sister and sister-in-law both testified that he struck her in the nose. The patrolman and appellant's father also testified that they saw the sister's bloody nose. Pictures of the bloody nose were also placed into evidence. (Tr. 13-14). Therefore, there was both testimony and evidence showing a physical injury to appellant's sister, which was absent from Osso. This part of appellant's argument fails.
Appellant next essentially argues for a narrow definition of "family or household member" with regards to R.C. 2919.25. Appellant cites Walker, but there the victim was dating the defendant, and here, the victim testified to being appellant's sister. (Tr. 1). Hence, they are related by consanguinity which is recognized by R.C. 2919.25(E)(a)(ii). Appellant also argues that he and his sister did not reside together at the time of the incident, so the second prong of the relationship is not met. The Ohio Supreme Court, in State v. Williams (1997),79 Ohio St.3d 459, refused to adopt such a narrow definition. In refusing to do so the Williams court stated at 462:
 "This court has never defined 'cohabitation,' and the courts of appeals throughout Ohio have adopted various definitions. Williams notes that regardless of the definition of 'cohabitation,' the definition of 'family or household member' necessarily includes a person 'who is residing or has resided with the offender,' R.C. 2919.25(E)(1)(a), and urges this court to adopt a narrow definition of 'reside' which would limit 'family or household members' to those who actually share one residential address. This we decline to do.
"* * *
 "In contrast to 'stranger' violence, domestic violence arises out of the relationship between the perpetrator and the victim. * * *" (Emphasis added)
Since it is appellant's sister who is the victim here, this is the type of relationship R.C. 2919.25 is aimed at preventing. Williams, supra. Therefore, the second part of appellant's argument fails.
Based upon the testimony and evidence presented to the trial court showing the injuries to the sister's nose and the Ohio Supreme Court's rejection of a narrow definition of "family or household member" in Williams, supra, appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The trial court erred in allowing the admission of 'other acts' evidence in violation of Evid.R. 404(B)."
Appellant relies upon Evid.R. 404(B) which states:
 "(B) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Appellant argues that the trial court allowed the prosecuting attorney to question appellant about his other arrest in Monroe County for domestic violence against the same sister. The contested testimony states in pertinent part:
 "STATE: Okay, you also have pending domestic violence cases?
"SCOTT: Well,
"COSTINE: Objection, there are no convictions.
 "STATE: I thought we could bring an arrest, your honor?
 "COURT: The one in Monroe County that you were arguing about is admissible, if that is the one you are getting at.
 "STATE: Do you have charges pending of domestic violence in Monroe County?
"SCOTT: Yes I do." (Tr. 31).
Appellant argues that this questioning resulted in the trial court basing its decision on the pending arrest. Appellant recognizes an exception for Evid.R. 404(B) under R.C. 2945.59, but cites State v. Broom (1988), 40 Ohio St.3d 277; State v.Burson (1974), 38 Ohio St.2d 157; and State v. DeMarco (1978),31 Ohio St.3d 191, all of which held that the standard of admitting such evidence is strict. Appellant cites State v.Kelly (1993), 89 Ohio App.3d 320, which allowed evidence of prior instances of conduct to show a victim's state of mind, but argues appellee did not use this prior arrest to show the sister's state of mind. Appellant maintains that since the trial court allowed the testimony concerning the "other wrongs", this violated 404(B) and resulted in reversible error.
The reason for preventing a trial court from admitting evidence of "other wrongs" during a trial for a second, unrelated crime is best stated by the Ohio Supreme Court inState v. Allen (1987), 29 Ohio St.3d 53, 55, wherein it was stated:
 "The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand."
Appellant correctly asserts that although there is an exception to this rule, under R.C. 2945.59, this exception is to be strictly construed. Here, however, the defense counsel opened the subject of the previous arrest for domestic violence upon direct examination of appellant's sister stating:
 "COSTINE: Isn't it true that you threatened to bring domestic violence charges against him previous to this, knowing that you could use that over his head to control him?
 "SCOTT: I want to tell you something, that man attacked me.
"COSTINE: Yes or no?
 "SCOTT: He attacked me and I am not going to take abuse from you either.
"COSTINE: I asked you a question?
"COURT: Answer the question.
 "SCOTT: No, I did not threaten him with domestic violence, I didn't press charges until he smashed my nose.
 "COSTINE: No if you could listen to my questions. On October 10th, 1995 you put in your statement, that prior to this incident happening, the two of you were arguing about charges that you had on him in another county?
"SCOTT: Yes.
 "COSTINE: You agree with me that the two of you were involved in an argument the two of you and the things that were going on between the two of you?
 "SCOTT: It was brought up after I had told him it was time for him to take responsibility for his own actions and then he said you fucking slut, he goes you got charges on me down in Monroe County, he goes you aren't any better than your whore sister in Marietta." (Tr. 8-9).
The Ohio Supreme Court, in State v. Pollard (1970), 21 Ohio St.2d 171, held that when the defense counsel opens a subject relating to prior acts, the prosecution may ask questions regarding the subject on cross-examination. In so holding the Ohio Supreme Court stated at page 174:
 "Defendant's counsel opened this subject on direct examination * * * It would be reversible error for the prosecutor to be permitted to ask the defendant concerning arrests, as distinguished from convictions for crimes in violation of state and federal law, had the subject not been opened by the defense counsel." (Emphasis added).
Although in Pollard the defense counsel questioned the defendant concerning the other act, and here the defense counsel questioned the sister, who is the victim, this does not change the fact that it was the defense counsel who opened the subject. Evid.R. 404(B) is aimed at preventing "other wrongs" evidence so that it will not be considered in rendering a conviction. This is consistent with the Ohio Supreme Court's statement in Allen. When the defense counsel asks about "other wrongs" on direct examination, these wrongs are made known to the court, regardless of whether asked of the victim, or the defendant himself. When the defense counsel asked appellant's sister about the incident in Monroe County, this fact became known to the trial court. When the sister did not answer the question correctly, the defense counsel pressed her to answer. Appellant cannot now claim prejudice to the prosecuting attorney's questioning of him about the arrest in Monroe County, when his counsel first made this fact known to the trial court.
Furthermore, since this was a bench trial, the dangers of conviction based upon the previous arrest are lessened, since it is the trial judge and not a jury who hears the "other wrongs" evidence. The trial judge is likely, and here does, convict appellant based upon the facts of the case and not on the previous arrest stating:
 "COURT: The court feels that state has shown beyond a reasonable doubt the defendant did commit the offense of domestic violence against his sister, * * * It is clear to the court that he was not retreating even with his father in between pushing him back he still was the aggressor and did throw the punch that damaged her nose to the point as the picture shows she had a bloody nose. The court feels he had ample opportunity to retreat and didn't do that. Even when he was already facing other charges he still didn't retreat. Court finds he is guilty of the domestic violence charge from October 10th, 1995." (Tr. 33-34).
The trial court considered the evidence of the charge before it and did not base its decision on the previous arrest. Therefore, the dangers of "other wrong" evidence as stated inAllen are not present in this case. Furthermore, the heart of appellant's objection was on the fact that the other act was an arrest instead of a conviction, but as the Ohio Supreme Court has held, an arrest may be questioned on cross-examination if it is opened by the defense counsel. Pollard, supra. The defense counsel here opened the subject on direct examination of appellant's sister.
Based upon the Ohio Supreme Court's holding inPollard and the fact that the defense counsel opened the subject of the previous arrest on direct examination of appellant's sister, and the trial court's consideration of the evidence before it, appellant's second assignment of error is found to be without merit.
The judgement of the trial court is affirmed.
Hon. Edward A. Cox, Hon. Joseph J. Vukovich, Hon. Cheryl L. Waite, JUDGES.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ------------------------ EDWARD A. COX, JUDGE