DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which the court found appellant guilty of felonious assault with a firearm specification in violation of R.C.2903.11(A)(2) and 2941.145.
Appointed counsel, Stephen Long, has submitted a request to withdraw pursuant to Anders v. California (1967), 386 U.S. 738.
In support of his request, counsel for appellant states that, after reviewing the record of proceedings in the trial court, he was unable to find any meritorious, appealable issues. Counsel for appellant does, however, set forth the following potential assignments of error:
 "1. Appellant was denied effective assistance of counsel.
 "2. Appellant's felonious assault conviction was supported by insufficient evidence and was against the manifest weight of the evidence.
 "3. The cumulative effect of the errors which occurred during appellant's trial deprived appellant of a fair trial and undermines the reliability of the jury's verdict and deprived appellant of his rights to a fair trial and due process."
The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth inAnders, supra and State v. Duncan (1978), 57 Ohio App.2d 93. In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. Id. at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellant court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
In this case, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. This court notes further that appellant has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, this court shall proceed with an examination of the potential assignments of error set forth by counsel for appellant and the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.
The facts relevant to this appeal are as follows. On September 18, 2000, shortly before 11:30 a.m., appellant and another man, Latrel Brown, drove into the parking lot at Wayman Palmer apartments in a small red automobile. Tod Harper and several friends were walking across the parking lot after purchasing Swisher Sweet cigars at a local store. When Harper and his friends approached the red automobile, an individual exited the vehicle. At that point, Harper turned and ran. The individual who exited the vehicle then fired several shots from a small handgun, wounding Harper in the upper leg and face.
Harper was taken to St. Vincent Mercy Medical Center, where his injuries were treated. On September 19, 2000, Harper was shown a photo array by police, after which he identified appellant as the individual who exited the vehicle and fired the gun.
On September 25, 2000, appellant and Brown were indicted by the Lucas County Grand Jury on one count each of felonious assault with a firearm specification, in violation of R.C. 2903.11(A)(2) and 2941.145. On November 20, 2000, a jury trial was held at which testimony was presented on behalf of the prosecution by Tod Harper, Christopher Darden, Toledo Police Sergeant Gloria Burkes, and Police Detectives William Goetz, David Cogan, Dan Richardson and Rick Molnar. Latrel Brown testified on behalf of the defense.
Harper testified at trial that he saw a red Dodge Avenger drive into the Wayman Palmer parking lot as he was returning from the store with his friends at approximately 11:30 a.m. Harper further testified that, even though the vehicle had tinted windows, he could see two individuals sitting inside with a handgun resting between them. Harper stated that he heard Terry Jones, one of Harper's friends, yell that there was a gun in the car. Harper stated that when he realized there was a gun in the vehicle, he turned and ran. Shortly thereafter, he heard several shots and felt pain in his leg and face. He said did not see the shooter. He then made his way to the apartment of a friend, after which the police were contacted.
Harper testified that he had known Latrel Brown, who he also knew by the street name "Train," for approximately two years before the shooting, and had stayed at Brown's home on occasion. He also testified that tension had developed between himself and Brown several weeks before the shooting, when Brown accused Harper of stealing property and money from Brown's residence. Harper further stated that he had known appellant, a.k.a. "Pumpkin," for at least several months before the shooting, and that he had seen appellant at Brown's residence on several occasions.
Darden testified at trial that he witnessed the shooting on September 18. Darden stated that he was standing next to Harper when the vehicle pulled into the parking lot, and he observed the passenger of the vehicle exiting the vehicle with a gun after trying unsuccessfully to shoot the gun through the car window. Darden identified appellant as being the shooter of the gun, and further stated that he believed Harper was the intended target of the shooting.
Sergeant Burkes testified that she saw Harper at St. Vincent's Hospital before he was taken into surgery. She stated that Harper was coherent and, when asked who did the shooting, he identified the shooter only as "Pumpkin."
Detective Goetz testified that he was dispatched to the parking lot after the shooting to collect evidence. He further testified that two spent casings were found in the area, along with one spent bullet and one damaged copper jacket. Goetz stated that other evidence collected at the crime scene included a bloody T-shirt and photographs of blood on both the parking lot and the door of the apartment Harper entered after he was shot.
Detective Cogan testified at trial that microscopic and macroscopic tests conducted on the two casings showed they were fired from the same nine millimeter handgun. He further testified that, although the spent bullet and copper jacket could have been fired from a nine millimeter handgun, he could not be certain they were fired from the same gun as the two casings.
Detective Richardson testified at trial that appellant surrendered to police custody on September 20, 2000, after which appellant was interviewed by police.
Detective Molnar testified that he was called to the Wayman Palmer parking lot shortly after the shooting occurred. He stated that he interviewed Ebony Hanks, who had called 911 to the scene, and Chandra Rogers, who was with Harper when he was shot. Richardson further stated that Rogers told him that "Pumpkin" was the shooter. Molnar testified that after Rogers identified appellant as the shooter, he prepared a photo array that included six pictures, one of which was appellant. When shown the array, both Rogers and Darden positively identified appellant. Molnar further testified that he showed Harper the array at the hospital, and Harper positively identified appellant as the shooter. Molnar stated that, when shown a second photo array containing a photo of Latrel Brown, Harper identified Brown as the driver of the red vehicle.
Molnar then testified that he interviewed appellant on September 20, 2000 for approximately three hours. Molnar stated that, after waiving his Miranda rights, appellant stated that he and Brown drove to the Wayman Palmer parking lot on September 18, 2000, in a red vehicle that the two men had "rented" from another individual in exchange for drugs. Molnar also stated that appellant told him Brown was angry at Harper because he thought Harper had stolen Brown's clothes, property and money. Molnar further stated that appellant told him there was a gun in the car and that Brown was going to shoot Harper.
Molnar testified that appellant denied shooting the gun himself, and identified Brown as the shooter. He also testified that appellant told him Brown disposed of the gun by throwing it into the river. He stated that, although appellant was pleasant and cooperative during the three-hour interview, Molnar perceived that appellant was "not truthful" when he said he did not shoot Harper.
At the close of Molnar's testimony, Harper's medical records were introduced into evidence by stipulation of both parties. Thereafter, the prosecution rested its case, and testimony for the defense was presented by Latrel Brown.
Brown testified at trial that he and Harper were friends, and he did not know if Harper ever stole property from Brown's residence. Brown further testified that, after the shooting, he and appellant devised a plan whereby Brown would confess to shooting Harper so that, when witnesses identified appellant as the shooter, reasonable doubt would be created as to who actually did the shooting. Consequently, neither man could be convicted of the crime. Brown stated that he did confess and voluntarily surrender to police on September 20, 2000; however, he now wished to recant his confession and identify appellant as the shooter.
At the close of all the testimony, the jury found appellant guilty of felonious assault with a firearm specification, as charged in the indictment. On November 30, 2000, the trial court sentenced appellant to service six years in prison for felonious assault pursuant to R.C.2929.14(B), and an additional mandatory, consecutive term of three years in prison for the firearm specification pursuant to R.C. 2929.14(D)(1). A timely notice of appeal was filed.
The first potential assignment of error raises the issue of whether appellant denied effective assistance of counsel at trial. The standard to be applied to claims of ineffective assistance of counsel is whether the defendant has shown that: (1) trial counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v.Washington (1984), 466 U.S. 668, 687. To prevail on a claim of ineffective assistance of counsel, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689.
In this case, testimony was presented that three witnesses identified appellant as the individual who shot Todd Harper. In his defense, appellant presented the testimony of Latrel Brown in an attempt to create reasonable doubt as to the credibility of those witnesses.
This court has thoroughly reviewed the record and, upon consideration of the foregoing, we find that, under the circumstances of this case, the presentation of Brown's testimony could be considered sound trial strategy. Accordingly, there is no indication that appellant was deprived of effective assistance of trial counsel. Appellant's first potential assignment of error is without merit.
The second potential assignment of error raises the issue of whether the conviction is supported by sufficient proof of guilt and/or was against the manifest weight of the evidence.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v.Thompkins (1977), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6th Ed. 1990) 1594. The term "sufficiency of the evidence" is a legal term of art that refers to whether the evidence is legally adequate to support a jury verdict of guilty as to all elements of the crime as a matter of law. Id. "A conviction based on legally insufficient evidence constitutes a denial of due process." Id. at 386, citing Tibbs v.Florida (1982), 457 U.S. 31, 45.
The Ohio Supreme Court has further held that: "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, citing Tibbs, supra at 42. To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
R.C. 2903.11(A)(2) states that no person shall knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(D) states that "[w]hoever violates this section is guilty of felonious assault, a felony of the second degree." In addition, the indictment in this case charged appellant with committing the crime while having a firearm on or about his person or under his control, and either displaying, brandishing or indicating he possessed the weapon, or used the weapon to facilitate the offense of felonious assault, pursuant to R.C. 2941.145. It is undisputed in this case that the crime was committed with a nine millimeter handgun, which fits the definition of a "firearm."
We have thoroughly reviewed the evidence in this case and find that sufficient evidence was presented to support a verdict of guilty as to each element of the crime. In addition, we find no indication that the jury lost its way or created a manifest miscarriage of justice by finding appellant guilty of felonious assault with a firearm specification. Accordingly, appellant's second potential assignment of error is without merit.
The third potential assignment of error raises the issue of whether the cumulative effect of errors occurring during the trial deprived appellant of a fair trial and undermined the reliability of the jury's verdict.
The Supreme Court of Ohio has recognized that the cumulative effect of errors may deprive a defendant of a fair trial, even though the individual instances of error do not warrant reversal. State v. DeMarco
(1987), 31 Ohio St.3d 191, 196-197. However, the doctrine of cumulative error is not applicable in cases where the defendant fails to establish multiple instances of harmless error during the course of the trial.State v. Garner (1995), 74 Ohio St.3d 49, 64.
In this case, appellate counsel has generally directed this court's attention to numerous portions of the trial transcript in which the court made rulings as to defense counsel's objections. However, counsel has failed to argue that the trial court erred in making any of those rulings, and our own review of the record does not indicate that any such errors occurred. Accordingly, the doctrine of cumulative error is not applicable and appellant's third potential assignment of error is without merit.
Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, this appeal is found to be without merit and wholly frivolous. Appellate counsel's motion to withdraw is found well-taken and is hereby granted. The decision of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.