[Cite as *Nelson v. Powers*, 2020-Ohio-1076.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| INGRID M. NELSON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2019-G-0214** |
| DAN POWERS, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Chardon Municipal Court, Case No. 2015 CVF 000014.

Judgment: Affirmed.

*Matthew W. Rolf,* Matt Rolf Attorney LLC, 100 Center Street, Suite 284, Chardon, OH 44024 (For Plaintiffs-Appellees).

*Thomas J. Sacerich, 8302 Yellowbrick Road, Mentor, OH 44060* (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Dan Powers, et al., appeal from the judgment of the Chardon Municipal Court, adopting the magistrate's decision, awarding appellees, Ingrid M. Nelson, et al., a total of $15,000 in damages on her complaint alleging, inter alia, breach of contract and unfair and deceptive trade practices in violation of the Ohio Consumer Sakes Practices Act ("CSPA"); appellants additionally appeal the trial court's award of attorney fees in the amount of $12,000. We affirm.

{¶2} Ms. Nelson lives in a residence in Novelty, Ohio and runs Royalcrest Animal Spa Ltd. ("Royalcrest"), a domestic limited liability company for boarding dogs. The business is operated out of her residence. Mr. Powers is a contractor who owns a business registered as "Powers Landscaping Company." Mr. Powers, however, refers to his business not only as "Powers Landscaping Company," but also "Powers Landscaping Co.," "Powers Landscaping Company Inc.," "Dan Powers Landscaping," "Powers Landscaping," and "Powers Landscaping Inc."

{¶3} In late 2013 or early 2014, Royalcrest, via Ms. Nelson, contracted with Mr. Powers and his company to do certain work for the dog-boarding business. The work was done by Mr. Powers' company for Royalcrest and the quality of that work was never in dispute.

{¶4} Around the same time, Ms. Nelson met with Mr. Powers regarding certain excavation and construction projects with which she wished to proceed. She wanted to construct a barn for her two horses, along with an indoor staging arena for the same. She made it clear, she did not have a business for boarding horses and wanted the barn to serve as a means of housing and working with her horses, which she cared for in a personal capacity. As such, the construction was unrelated to her business activities.

{¶5} After discussing more thoroughly the barn construction project, Ms. Nelson decided to contract with appellants to "excavate" the land in preparation for the construction. To this end, appellants agreed to regrade Ms. Nelson's property to prevent water from flowing into or near her home and collecting on her driveway and garage; grind certain stumps; and level an area where the eventual barn would be

2

erected. Appellants quoted Ms. Nelson a price of $4,800 for these services. Prior to beginning work, however, Mr. Powers suggested that he add fill dirt to various parts of the land. Ms. Nelson asserted Mr. Powers quoted her a price of $2,000 for the dirt; she agreed, but no written estimate was submitted by appellants. Ms. Nelson subsequently contracted with appellants to level the ground and spread base sand for an above-ground pool near the site for $300. According to Ms. Nelson, she agreed to pay appellants and his company a total of $7,100 for the work.

{¶6} Between August 2014 and October 2014, appellants were on Ms. Nelson's property with heavy equipment, frequently dumping dump-truck loads of dirt to the site. Ms. Nelson asserted appellants delivered approximately 18 loads of dirt while appellants contended they delivered 41 loads. No documentation was submitted to Ms. Nelson regarding the quantity of dirt delivered and Mr. Powers did not provide any documentary evidence of the amount. Moreover, evidence was adduced that appellants did not purchase the dirt from a third party; rather, was removed from Mr. Powers' private property at no ostensible cost to Powers Landscaping Company.

{¶7} At the beginning of September, Ms. Nelson became concerned about the progress of the excavation because appellants had done little to grade and/or level the property. On September 9, 2014, Mr. Powers visited Ms. Nelson's residence, dropped off an additional truck load of dirt, explaining he needed to finish other jobs before continuing with her project. He also represented he needed to make payroll and requested Ms. Nelson pay $3,850; in an effort to facilitate the completion of the excavation, Ms. Nelson wrote Mr. Powers a check in that amount. Although no revised,

3

written estimate was ever submitted, Ms. Nelson ultimately paid Mr. Powers and/or his company a total of $9,250 from her personal, home-equity account listed in her name.

{¶8} On September 23, 2014, Ms. Nelson sent Mr. Powers a letter outlining the parties' agreement, as she understood it. She requested an itemization for the work and requested an explanation for the overcharge. Ms. Nelson did not receive a response. On October 10, 2014, she contacted police who, in turn, contacted Mr. Powers. According to the police report, Mr. Powers maintained that the project was finished; ultimately, however, at trial, Mr. Powers conceded the job was left incomplete.

{¶9} In late October 2014, Mr. Powers brought a small load of gravel to the site that ostensibly was going to be used to regrade the driveway. According to Ms. Nelson, he and his workers "dug the driveway out, dumped a load of gravel, moved some dirt around, started digging at a stump that was there and, after a few hours, said 'We're leaving. The stump's - - We can't get the stump out, can't finish.'" As they left, Mr. Powers submitted an invoice in the amount of $15,350. The invoice was sent by "Powers Landscaping Inc." to "Royalcrest Animal Spa Ltd." The invoice itemized 41 loads of topsoil, for a total of $9,250; $300 for the "pool;" and $4,800 for the excavation. Appellants did not return to the site.

{¶10} In November 2014, Ms. Nelson filed a pro se, small-claims complaint seeking damages in the amount of $3,000 against appellants. Appellants filed an answer and a counterclaim. Subsequently, appellants filed a motion for leave to transfer the case to the general civil docket. The motion was granted and, after Ms. Nelson retained counsel, she filed an amended complaint, seeking $15,000 in economic

damages and $5,000 in non-economic damages, as well as attorney fees. The amended complaint was different from the original in nearly all respects.

{¶11} Appellants failed to file an answer within the time allotted by the court and, Ms. Nelson ultimately filed a motion for default judgment, which was denied, and later an amended motion for default judgment. Meanwhile, while the amended motion was pending, appellants filed their answer. The trial court, however, granted Ms. Nelson's amended motion and awarded damages. Appellants subsequently moved the trial court, pursuant to Civ.R. 60(A) and (B) for relief from judgment. The magistrate denied the motion and the trial court adopted the same. Appellants appealed that judgment and, in *Nelson v. Powers*, 11th Dist. Geauga No. 2015-G-0031, 2016-Ohio-1159, this court reversed the trial court's judgment and remanded for further proceedings.

{¶12} Ultimately, the matter came for trial before the magistrate. After hearing evidence, the magistrate concluded appellants violated the CSPA and engaged in deceptive trade practices. The magistrate determined Ms. Nelson should be awarded "$9,250 in damages, trebled, plus $5,000 for a total of $15,000."[1] Objections were filed, which Ms. Nelson opposed. The trial court held the objections in abeyance, pending a hearing on Ms. Nelson's request for attorney fees. Ultimately, Ms. Nelson submitted an itemized attorney fees bill. The total bill was $17,820. Counsel, however, stated he eliminated fees related to Royalcrest, which are not subject to CSPA. The reduced bill totaled $12,478, reducing the bill so as not to include court costs, counsel requested $12,000, which the magistrate awarded. Appellants filed objections and, on May 20, 2019, the trial court adopted the magistrate's decisions. This appeal followed.

---

1. Initially, the magistrate did not actually award treble damages. $9,250, "trebled," would be $27,750 and this would exceed the municipal court's subject-matter jurisdiction of $15,000, the amount awarded in this matter. *See* R.C. 1901.17.

5

{¶13} Appellants' first assignment of error provides:

{¶14} "The trial court committed prejudicial error when it determined that the contract for the excavation of the land of plaintiff was subject to the Ohio Consumer Sales Practices Act."

{¶15} Appellants assert the trial court erred in concluding that the contract for work was entered with Ms. Nelson personally, rather than her company, Royalcrest. They maintain they did work for Ms. Nelson's company and, as a result, the contract was placed outside the CSPA. We do not agree.

{¶16} R.C. 1345.01(A) provides: "'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." A "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). And a "consumer" is "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D).

{¶17} At trial, Ms. Nelson testified that, while she runs Royalcrest out of her residence, she personally owns the property. She also testified Royalcrest is a dog-boarding business and she intended to build the barn, the construction of which was the purpose of the excavation, for her two horses. She stated she does not operate a horse-boarding facility and wanted the barn for her personal interest in training her horses. Moreover, she stated she wished to include an arena in the barn so she could work with her horses indoors during bad weather. Further, she testified she did not

6

intend to use the barn to board dogs for Royalcrest. She testified the floor of the arena would be soft dirt to suit a horse's footing and this would not be conducive for boarding or sheltering her clients' dogs. Furthermore, appellants' original estimate was directed at "Ingrid Nelson," not Royalcrest; and the money Ms. Nelson paid appellants was withdrawn from her personal account, not a business account.

{¶18} We recognize appellants' final invoice was directed at Royalcrest; nevertheless, the invoice was delivered during appellants' last visit to the work site and after Ms. Nelson had expressed her dissatisfaction with the project's progress. The greater weight of credible evidence supports the magistrate's conclusion that appellants contracted with Ms. Nelson, personally. Pursuant to statute, appellants were suppliers to a consumer transaction with Ms. Nelson, a consumer. Hence, the trial court did not err in adopting the magistrate's decision, applying the CSPA.

{¶19} Appellants' first assignment of error lacks merit.

{¶20} Appellants' second assignment of error provides:

{¶21} "The trial court committed prejudicial error when it based damages alleged on inadmissible hearsay."

{¶22} Appellants assert the trial court erred in basing its damages finding on unadmitted hearsay evidence. Appellants point out that Michael Ranney, a contractor who testified on Ms. Nelson's behalf, stated he visited the work site, with an unnamed excavator after appellants abandoned the job. Mr. Ranney testified that, in its condition, the site could not be remediated and thus would require an excavator to start the job anew. Ms. Nelson attempted to introduce a letter, penned by the unnamed excavator, that provided an estimate of $16,000 for the work. The magistrate excluded this letter

7

as hearsay. Appellants assert the trial court inappropriately used this as a basis for its damages award of $15,000. We do not agree.

{¶23} Evidence established that Ms. Nelson suffered $9,250 in actual damages (the amount she paid appellants); the magistrate then added $5,000 to this amount. R.C. 1345.09(A), which addresses, inter alia, "consumer's relief" under the CSPA provides, where a violation of the Act is found, "the consumer may * * * recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." The magistrate found a violation of the Act, awarded Ms. Nelson her actual economic damages plus the statutorily allowed amount of $5,000 in noneconomic damages. There was no evidence the court relied upon the inadmissible estimation of the unnamed excavator. This aspect of appellants' argument lacks merit.

{¶24} Next, appellants claim the trial court erred in allowing admittedly inadmissible hearsay evidence to their prejudice. Ms. Nelson submitted an estimate from "Town-N-Country Pavers, Inc.," a concrete and sealcoating company, which stated it would charge $2,750 to, inter alia, "[r]egrade the driveway for the proper drainage." No representative from the company was called to testify regarding this estimate or the nature of the work. Although appellants did not object to the estimate when it was introduced, they objected when Ms. Nelson sought its admission. After considering the objection, the magistrate observed:

{¶25} You know, I'm looking at [the exhibit], and it says "regrade the driveway for proper drainage." She testified to what she paid. And I realize your objection is, hey, you can't question - -Well, I don't see the reason why you would have to cross-examine

8

this guy. The bill states what it is. That, in itself, is hearsay, okay, but I am going to allow it in for what it's worth."

{¶26} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "It is axiomatic that hearsay evidence is inadmissible unless it falls within the specific hearsay exceptions enumerated in the Rules of Evidence." *State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987).

{¶27} While we agree the estimate was hearsay, we fail to see how its admission harmed appellants. At most, therefore, the evidence was harmless error.

{¶28} Civ.R. 61 provides:

{¶29} No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶30} In analyzing whether a substantial right has been affected, a reviewing court must determine whether the trier of fact would have reached the same decision, had the error not occurred. *See, e.g., Prakash v. Copley Twp.,* 9th Dist. Summit No. 21057, 2003-Ohio-642*,* ¶16.

{¶31} Here, Ms. Nelson testified that she paid $2,750 to have her driveway regraded and leveled after appellants had ceased work. The evidence of the estimate was accordingly cumulative of Ms. Nelson's testimony. We accordingly conclude any error in admitting the estimate was harmless.

9

{¶32} Appellants' second assignment of error lacks merit.

{¶33} Appellants' third and fourth assignments of error provides:

{¶34} "[3.] The trial court committed prejudicial error when it allowed plaintiff's attorney's fee bill to be used when it was never presented to defendant's [counsel] prior to the hearing on attorney's fees.

{¶35} "[4.] The trial court committed prejudicial error and abuse of discretion [sic] when it held another hearing after plaintiff's attorney rested solely to admit into evidence the attorney's fee bill."

{¶36} Appellants do not dispute that Ms. Nelson was statutorily eligible for attorney fees; instead, they first assert the trial court erred when it permitted Ms. Nelson to use her counsel's bill to establish the amount of attorney fees because the bill was not submitted to them prior to the hearing. Appellants support their argument citing Chardon Municipal Court Rule 33, which requires submission of exhibits to the court at a pretrial. While the manner in which counsel for Ms. Nelson proceeded may be a technical violation of the rule, any error was harmless.

{¶37} Two hearings took place on attorney fees. The first, on October 18, 2018, appellants were represented by a colleague of their trial attorney because trial counsel had a scheduling conflict. Notwithstanding the failure to present the bill to either the court or appellants' counsel prior to the hearing, "stand-in" counsel was able to effectively take issue with several aspects of the bill; to wit: he argued any fees that were incurred prior to the remand order of this court should be deducted; he also argued that counsel for Ms. Nelson served a dual role, as counsel for her and her company (who was joined as a third-party defendant). As a result, he noted it would be

10

impossible to differentiate between work done for Ms. Nelson and work done for her business. This is problematic because her business is not entitled to the protections of the CSPA. In light of these points, we conclude the failure to produce the fee bill prior to the hearing did not prejudice appellants.

{¶38} Next, appellants claim the trial court erred in remanding the attorney fees issue to the magistrate for him to formally admit the fee bill, which was not accomplished at the first hearing. Appellants maintain Ms. Nelson's failure to seek admission of the bill at the original hearing precluded the admission and thus, without evidence of the fees in the form of a bill or formal testimony, she is not entitled to attorney fees. Again, we do not agree.

{¶39} Appellants objected to the magistrate's decision to award attorney fees to the extent Ms. Nelson's counsel did not seek to admit the fee bill into the evidence. The trial court sustained this objection, but returned the matter to the magistrate for counsel to introduce the exhibit and have it admitted.[2]  Civ.R. 53(D)(4)(a) provides that a magistrate's decision is not effective or final unless adopted by the trial court. Moreover, Civ.R. 53(D)(4)(d) provides: "In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, *the court may hear additional evidence * * *."* (Emphasis added.)  By remanding the magistrate's decision, which was not final, the court concluded it was incomplete and "additional evidence," in the form of the fee bill, was necessary for it to fully review

---

2. It is worth pointing out that Ms. Nelson's counsel presented the bill to the magistrate, who accepted the fee bill after the hearing and advised the parties he would review the invoice and determine whether the amount sought matched the itemized work. In this respect, the remand order was perfunctory:  The record needed to formally contain what the magistrate had already accepted and reviewed.

11

the decision. The court's actions are permitted by rule and, as such, we discern no error.

{¶40} Appellants' third and fourth assignments of error lack merit.

{¶41} For their fifth assignment of error, appellants contend:

{¶42} "The trial court committed prejudicial error when it found that defendant, Dan Powers, held himself out as different entities in violation of the Ohio Consumer Sales Practices Act."

{¶43} Appellants contend the magistrate's conclusion that Mr. Powers held himself out as different entities in violation of the CSAP was unsupported by the evidence. Instead, they maintain, Ms. Nelson was aware of who she was working with and there was not confusion that Mr. Powers was the head of the landscaping company with whom she contracted to do work.

{¶44} Initially, Ms. Nelson asserts appellants failed to object on the foregoing basis. This is not exactly accurate. In their objections, appellants observed: "No evidence was presented that plaintiff was in any way misled by advertisements of Powers Landscaping Company, Inc. and all dealings were with the president of Powers Landscaping Company, Inc., Dan Powers." This was sufficient to preserve the argument appellants advance on appeal.

{¶45} In his decision, the magistrate made the factual finding that Mr. Powers held himself out using multiple different permutations of names, all ostensibly referring to his only company, Powers Landscaping Company. In the magistrate's conclusions of law, he determined: "The regulations additionally require the identity of the supplier to be listed and evidence has been submitted that Mr. Powers submitted names of his

12

company that were not registered as either an entity or a fictitious name. In addition to violating the Regulations, Defendants violated R.C. 4165.01 *et seq.* by their failure to use the proper name of the entity."

{¶46} The foregoing legal conclusion does not specify which regulation or statutory subsection appellants violated under the CSPA. Moreover, R.C. 4165.01, *et seq.* addresses deceptive trade practices in labor and industry but is separate from Chapter 1345. As a result, neither the magistrate, nor the trial court made an affirmative finding that Mr. Powers held himself out as different entities *in violation of* a specific provision of the CSPA.

{¶47} Appellants' final assignment of error lacks merit.

{¶48} For the reasons discussed in this opinion, the judgment of the Chardon Municipal Court is affirmed.


TIMOTHY P. CANNON, P.J.,

MATT LYNCH, J.,

concur.