DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Darrell Jordan charged, grabbed, and began fighting with a police officer. After another officer brought them to the ground, Mr. Jordan refused to let the officer he had grabbed get up. He also refused to let officers handcuff him. A jury convicted him of assaulting a police officer, resisting arrest, and obstructing official business. Mr. Jordan has argued that his convictions are against the manifest weight of the evidence, that he received ineffective assistance of counsel, and that the trial court allowed evidence that was more prejudicial than probative. This Court affirms because his convictions are not against the manifest weight of the evidence, because his counsel was not ineffective, and because any error attributable to the admission of the contested evidence was harmless beyond a reasonable doubt. *Page 2 
 FACTS {¶ 2} According to Officer Fred Merrill of the Elyria Police Department, he was on patrol on December 27, 2005, when a pedestrian approached his cruiser and told him there was a man crying very loudly on a nearby bridge. Officer Merrill could hear the crying from his open window and drove over to the bridge to investigate. After exiting his car, he spotted Mr. Jordan crying. In light of his emotional state, location, and the fact that it was around the holidays, Officer Merrill thought that Mr. Jordan might be contemplating suicide and requested assistance.
 {¶ 3} Officer Merrill testified that dealing with a person who might be suicidal is a dangerous situation because someone who is willing to take his own life might also be willing to take someone else's life. He approached Mr. Jordan and attempted to talk to him, but Mr. Jordan did not respond. He then shined his flashlight on Mr. Jordan and moved the light around, trying to get his attention. When that also failed, he put his flashlight away and backed away.
 {¶ 4} Around that time, Officer James Ketstetter arrived at the bridge. Officer Merrill continued talking to Mr. Jordan, who finally turned toward him. When Officer Merrill asked Mr. Jordan to show him his hands, Mr. Jordan reached into his jacket instead. Officer Merrill unholstered his gun and pointed it in front of him in a low ready position. He continued asking Mr. Jordan to show him his hands, but Mr. Jordan began approaching him, exhibiting "a million mile stare." According to Officer Ketstetter, Mr. Jordan told Officer Merrill to "[s]hoot me, kill me, just fuckin' shoot me." Officer Merrill told Officer Ketstetter to get his pepper spray out, and Officer Ketstetter then called out either "[s]ir" or "[h]ey, guy" to Mr. Jordan, who turned and began charging at him at a full sprint.
 {¶ 5} When Mr. Jordan got within a couple feet, Officer Ketstetter shot a two-second burst of pepper spray into his face. Mr. Jordan continued forward, grabbed onto Officer *Page 3 
Ketstetter, and began fighting with him. Officer Merrill put his gun away and hurried over. When he got close to the men, one of Mr. Jordan's arms struck him in the head. He grabbed hold of Mr. Jordan and Officer Ketstetter and pulled them to the ground. As Mr. Jordan and Officer Ketstetter fell, their legs intertwined. Although Mr. Jordan was face down with his arms curled under him, he would not release Officer Ketstetter's legs. Officer Ketstetter, therefore, began punching him in the legs, trying to get him to let him up. Officer Merrill, meanwhile, began hitting Mr. Jordan in the side with a metal rod. Officer David Kerecz arrived, kneeled on Mr. Jordan's back, and tried to bring his arms out from under him. When Mr. Jordan refused, Officer Kerecz tried to use a pressure technique to get him to comply. When that failed, he applied more pepper spray to Mr. Jordan's face. Officer Richard Ellis then arrived and began kneeing Mr. Jordan in the back. Although Mr. Jordan pushed up on his arms, lifting all four officers up with him, they eventually were able to handcuff him behind his back.
 {¶ 6} The officers took Mr. Jordan to the city jail, where he was allowed to wash the pepper spray off. While conducting an inventory search of a backpack Mr. Jordan had with him, the police found a grassy substance that appeared to be marijuana and a clip and box of ammunition. According to the officer who conducted the search, Mr. Jordan told him that he had thrown a gun in the river.
 {¶ 7} The Grand Jury indicted Mr. Jordan for assaulting Officers Merrill and Ketstetter, resisting arrest, and obstructing official business. He entered a plea of not guilty and not guilty by reason of insanity, but abandoned the insanity plea before trial. A jury convicted him of assaulting Officer Ketstetter, resisting arrest, and obstructing official business, and the trial court sentenced him to two years of community control. He has appealed, assigning four errors. *Page 4 
 MANIFEST WEIGHT {¶ 8} Mr. Jordan's first assignment of error is that his convictions are against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 9} Regarding Mr. Jordan's conviction for assault, Section 2903.13(A) of the Ohio Revised Code provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another. . . ." One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 10} Officer Merrill testified that, after Officer Ketstetter said "hey, guy," Mr. Jordan turned toward him and charged. According to Officer Ketstetter, Mr. Jordan charged at him at a full sprint. When he got close, Officer Ketstetter shot him between the eyes with pepper spray. Mr. Jordan kept coming at him, however, grabbed him, and began fighting with him. Although Officer Merrill brought them to the ground, Officer Ketstetter said that Mr. Jordan refused to let him up after their legs intertwined. The State presented photographs showing that Officer Ketstetter's hands suffered scratches and that his knees were swollen and had skin abrasions. The jury was entitled to believe the testimony as presented by the officers and conclude that Mr. *Page 5 
Jordan knowingly caused or attempted to cause harm to Officer Ketstetter. This Court, therefore, concludes that his conviction for assault is not against the manifest weight of the evidence.
 {¶ 11} Regarding Mr. Jordan's convictions for resisting arrest and obstructing official business, Section 2921.33(A) provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Section 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 12} Officer Ketstetter testified that, before and after he and Mr. Jordan were on the ground, he heard Officer Merrill tell Mr. Jordan that he was under arrest. Officer Kerecz testified that, when he arrived at the bridge, he saw Officers Merrill and Ketstetter wrestling on the ground with Mr. Jordan and assumed Mr. Jordan was under arrest. He heard Officer Merrill yell for Mr. Jordan to stop resisting and bring his arms out from underneath him. When he got closer, he saw that Officer Ketstetter and Mr. Jordan's legs were intertwined and that Mr. Jordan was trying to hold Officer Ketstetter down. He tried to help get Mr. Jordan's arms out, but was unable to until Officer Ellis arrived. He suffered scraping and bruising to his left knee in the scuffle.
 {¶ 13} When Officer Ellis saw the other officers struggling with Mr. Jordan, he ran to assist them. He said the other officers were yelling for Mr. Jordan to put his hands behind his back and using various techniques to gain compliance, but nothing was working. After he got on top of Mr. Jordan, Mr. Jordan raised himself up, pushing all four of the officers off the ground. Having reviewed and weighed all the evidence that was before the trial court, this Court cannot *Page 6 
say that the jury lost its way and created a manifest miscarriage of justice when it found that Mr. Jordan resisted arrest and obstructed the officers in the performance of their lawful duties. His first assignment of error is overruled.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 14} Mr. Jordan's second and third assignments of error are that he received ineffective assistance of counsel. He has argued that his lawyer failed to assert self-defense or the defense of not guilty by reason of insanity. To succeed on these arguments, Mr. Jordan would have to show that his lawyer's performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668,687 (1984). To establish that his lawyer was deficient, he would have to show that his lawyer's representation "fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, he would have to show that there is a reasonable probability that, but for his lawyer's errors, the result of his trial would have been different. Id. at 694;State v. Bradley, 42 Ohio St. 3d 136, paragraph three of the syllabus (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 {¶ 15} Mr. Jordan has argued that his lawyer should have requested a self-defense instruction because the evidence established that the officers attacked him for crying on a bridge. According to Mr. Jordan, the officers became nervous and overreacted. He has argued that he had every reason to lay on the ground with his arms protected under him while the four officers hit, kicked, and kneed him, applied painful pressure techniques to him, and shot his face with pepper spray.
 {¶ 16} "To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave *Page 7 
rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm." State v. Tanner, 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶ 21. The evidence established that Mr. Jordan initiated his altercation with the officers when he charged at Officer Ketstetter. Accordingly, even if Mr. Jordan's lawyer had requested a self-defense instruction, it is not reasonably probable that the outcome of his trial would have been different. His second assignment of error is overruled.
 {¶ 17} Mr. Jordan has also argued that his lawyer should have raised the defense of not guilty by reason of insanity. Mr. Jordan pleaded not guilty by reason of insanity, but was found competent to stand trial. At trial, his lawyer told the court that he wished to withdraw that plea. The lawyer explained that the "real problem" with the plea was that, because Mr. Jordan was only charged with a fourth degree felony, "even if he were to be found [not guilty by reason of insanity] . . . the consequences . . . would far exceed the punishment that may otherwise occur." When the court asked whether the decision to withdraw the plea was strategic, his lawyer replied: "Yeah. Strategic, unfortunately for a low level felony, an NGRI doesn't make sense given the way the State has structured . . . what's done after the finding."
 {¶ 18} The fact that there may have been "another and better strategy available [to a lawyer,] does not amount to a breach of an essential duty to his client." State v. Clayton, 62 Ohio St. 2d 45, 49 (1980). A defense lawyer's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quotingStrickland, 466 U.S. at 690). *Page 8 
 {¶ 19} The record establishes that Mr. Jordan's lawyer decided not to pursue an insanity defense because the consequences might have been more severe than a guilty verdict. Debatable trial tactics do not constitute ineffective assistance of counsel. State v. Hale, 119 Ohio St. 3d 118,2008-Ohio-3426, at ¶ 227 (citing Clayton, 62 Ohio St. 2d at 49). Mr. Jordan's third assignment of error is overruled.
 ADMISSION OF EVIDENCE {¶ 20} Mr. Jordan's fourth assignment of error is that the trial court incorrectly allowed evidence that was more prejudicial than probative. He has argued that the officer who inventoried his possessions should not have been allowed to testify about the contents of his backpack because they were not relevant to the crimes charged and because his testimony was more prejudicial than probative.
 {¶ 21} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage,31 Ohio St. 3d 173, paragraph two of the syllabus (1987). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Evid. R. 403(A).
 {¶ 22} The officer who inventoried Mr. Jordan's possessions testified that his backpack contained a bowl, a grassy-type substance, a loaded ammunition clip, and a box of .22 caliber ammunition. The trial court let the officer testify about the items because they were "not being offered for purposes of proving a crime, but just for the reasonableness of the officers'] actions confirming their belief that [Mr. Jordan] may have been using some substance that would add to his depression, [and that] he may have been a danger. . . ." According to Mr. Jordan, the trial *Page 9 
court's reasoning was backwards. Because the officers did not know what was in his bag until after they arrested him, it was impossible for them to form an opinion about whether he was dangerous based on its contents.
 {¶ 23} Even if the court should not have allowed the testimony about the contents of Mr. Jordan's bag, this Court may disregard the error if it was harmless beyond a reasonable doubt. State v. DeMarco,31 Ohio St. 3d 191, 195 (1987) (citing Chapman v. California, 386 U.S. 18, 24
(1967)). Under Rule 52(A) of the Ohio Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal."State v. Brown, 65 Ohio St. 3d 483, 485 (1992).
 {¶ 24} Multiple officers testified that Mr. Jordan charged at Officer Ketstetter, grabbed him, fought with him, and pinned his legs down. They also testified that Mr. Jordan, despite being told he was under arrest, did not comply with their instructions, resisted their attempts to handcuff him, and even pushed them up off the ground. Although the prosecutor highlighted Mr. Jordan's possession of ammunition to emphasize that the officers were dealing with a dangerous situation, his argument was merely cumulative because Officer Merrill had testified that any encounter with a person who might be contemplating suicide is dangerous. This Court concludes that there is no reasonable possibility that the testimony about the contents of Mr. Jordan's bag contributed to his conviction. His fourth assignment of error is overruled.
 CONCLUSION {¶ 25} Mr. Jordan's convictions were not against the manifest weight of the evidence, his counsel was not ineffective, and any error regarding the testimony about the contents of his *Page 10 
backpack was harmless beyond a reasonable doubt. The judgment of the Lorain County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 CARR, P. J., MOORE, J., concur. *Page 1