THE STATE OF OHIO, APPELLEE, *v.* DEMARCO, APPELLANT.

[Cite as State *v.* DeMarco (1987), 31 Ohio St. 3d 191.]

(No. 86-612—Decided July 8, 1987.)

*John T. Corrigan,* prosecuting attorney, and *Ann T. Manneu,* for appellee.

*Armstrong, Gordon & Mitchell, William Mitchell* and *Elliott S. Barrat,* for appellant.

FORD, J.

I

Our first inquiry concerns the trial court's admission, over objection, of evidence relating to other alleged acts of misconduct by appellant, involving different automobiles. Appellant's counsel filed a motion *in limine* which requested that the prosecutor be prohibited from presenting evidence of alleged acts of misconduct other than those charged in the indictment. Pursuant to this motion, the court ordered that the prosecutor address the court at a sidebar conference at any time he intended to bring in "any evidence pertaining to similar acts."

During appellant's trial, the court permitted testimony from Robert Knapik, the collection manager of Bank One, that Auto Cars had fifty-six cars leased, and that he believed that it was in violation of the lessor operating agreement. He further testified that he had written appellant to inform him that $437,563.81 was due. Appellant argues that this evidence did not relate to the 1980 Porsche involved in the seven counts of the indictment, and that the testimony suggested that appellant was involved in a gigantic scheme, involving numerous automobiles, to defraud Bank One. The prosecutor, in his closing argument, repeatedly implied that appellant was involved in numerous insurance frauds.[1] Appellee further argues that the objectionable testimony was admissible to show appellant's "knowledge of previous frauds and his intent to continue in the same pattern."

---

[1] The prosecutor stated, in his closing argument:

"I submit to you, ladies and gentlemen, that the plot and scheme and the scam that was perpetrated by the cast of characters here, Avi Stern, Tom DeMarco, Harvey Bruner, Mr. Dunagan, and their support staff, was the covert operation in an attempt, and a successful attempt in some circumstances to defraud banks and insurance companies of substantial amounts of money.
"* * *

"As I have said to you, the cohorts in this operation were basically four, and without each and every one of those four, acting in concert, aiding and abetting each individual person in the activities, that none of these activities would have come to fruition.

"They would have all fallen through without Stern, without DeMarco, without Bruner, and without Dunagan, these crimes could not have been committed. It was necessary that all four of them work together in various parts of this enterprise to carry off their illegal activities in defrauding banks and insurance companies or attempting to do such."

Also, see footnote 4, *infra,* involving a portion of Detective Kingzett's testimony.

Evid R. 404(B) provides that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

This Rule of Evidence is codified in R.C. 2945.59, which provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

This court has held that R.C. 2945.59 is to be strictly construed against the state, and to be conservatively applied by a trial court. See *State* v. *Burson* (1974), 38 Ohio St. 2d 157, 67 O.O. 2d 174, 311 N.E. 2d 526; *State* v. *Strong* (1963), 119 Ohio App. 31, 26 O.O. 2d 134, 196 N.E. 2d 801. This court has previously cautioned lower courts against the sweeping admission of evidence under R.C. 2945.59:

"Nowhere do the words 'like' or 'similar' appear in the statute. Prosecutors and trial courts should be particularly aware that evidence of other acts of a defendant is admissible [pursuant to R.C. 2945.59] *only* when it 'tends to show' one of the matters enumerated in * * * [that] statute and * * * when it is relevant to * * * [prove the defendant's guilt] of the offense in question. Such evidence is admissible, not because it shows that the defendant is crime prone, or even that he has committed an offense similar to the one in question, but in spite of such facts. * * *" *Burson, supra,* at 158, 67 O.O. 2d at 175, 311 N.E. 2d at 528. See, also, *State* v. *Hector* (1969), 19 Ohio St. 2d 167, 48 O.O. 2d 199, 249 N.E. 2d 912; *State* v. *Wilkinson* (1980), 64 Ohio St. 2d 308, 18 O.O. 3d 482, 415 N.E. 2d 261.

The same logic should apply to Evid. R. 404(B).

The evidence offered by the state regarding delinquent loans by Bank One to Auto Cars is not relevant to proof of the guilt of the appellant of the offense in question. The alleged delinquency of Auto Cars in its car loan payments does not necessarily establish any wrongdoing by appellant; nor is there an illustrated connection between the alleged delinquent loans on the part of the appellant and the crimes for which he was charged and convicted: dealings with the 1980 Porsche.

In this case we believe the state was impermissibly allowed to imply that appellant was involved in a large-scale operation to defraud banks and insurance companies without establishing a proper evidential predicate or nexus with the appellant for the admission of this matter.

## II

The second issue before this court is whether the trial court permitted inadmissible hearsay evidence. Appellant argues that the major portions of the testimony of the Aetna claims adjuster Patricia Page, Bank One of Akron auditor Alvin Lindeman, and police investigator Detective Robert Kingzett were inadmissible hearsay, based on information received from unidentified sources of unknown reliability; speculation; and other material indicia of reliability.

Evid R. 801(C) defines "hearsay" as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." It is axiomatic that hearsay evidence is inadmissible unless it falls within the specific hearsay exceptions enumerated in the Rules of Evidence. Hence, we must focus our inquiry to determine if inadmissible hearsay was permitted, and if so, whether such exercise was harmless or prejudicial.

This court has previously held that in order to hold an error harmless, the error must be harmless beyond a reasonable doubt. See *State* v. *Rahman* (1986), 23 Ohio St. 3d 146, 23 OBR 315, 492 N.E. 2d 401; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 368 N.E. 2d 623, vacated in part on other grounds (1978), 438 U.S. 910; *State* v. *Abrams* (1974), 39 Ohio St. 2d 53, 68 O.O. 2d 30, 313 N.E. 2d 823; *Chapman* v. *California* (1967), 386 U.S. 18. This court has also held that an error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction, and that in such cases there must be overwhelming evidence of the accused's guilt or some other indicia that the error did not contribute to the conviction. See *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 2 O.O. 3d 249, 357 N.E. 2d 1035, vacated in part on other grounds (1978), 438 U.S. 911; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768; *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 166, 5 OBR 380, 386, 450 N.E. 2d 265, 270, fn. 5, cited with approval in *Rahman, supra,* at 151, 23 OBR at 319, 492 N.E. 2d at 406.

At trial, Aetna claims adjuster Page testified, over objection, about her investigation regarding the reported theft of the 1980 Porsche.[2] Bank

---

[2] The following is a representative sample of Patricia Page's testimony:

"Q[:]  As a result of your investigation into this Porsche, did it come to your attention that the car had been damaged quite a while before it was leased by Richmond Associates?

"* * *

"A[:]  As part of my investigation, one of the standards of my company is on any stolen vehicle, we have to assume that a form of the National Theft Bureau is filled out, and this form was submitted and we had a hit. They came back and advised that the vehicle with the VIN number—

"Mr. Coyne:  Objection.

"The Court:  Overruled.

"A[:]  That we had the VIN number and we had submitted it to the National Theft Bureau, and that it came back saying that the vehicle had been sold prior, as a salvage vehicle.

One of Akron auditor Lindeman testified about the relationship between Auto Cars and Bank One of Ravenna.[3] Detective Kingzett testified about his investigation of the entire insurance fraud operation.[4]

Significant parts of the testimony of these witnesses involved technical violations of the hearsay rule, without a balancing demonstration of trustworthiness or reliability. Each of these witnesses testified about many events for which he or she did not have firsthand knowledge. The dispositive question is whether the hearsay testimony of these witnesses constituted harmless error. The court of appeals found that where hearsay was admitted at the trial level, the admission of such hearsay was harmless error.

In our view, the cumulative effect of these witnesses' hearsay testimony was prejudicial. Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a con-

---

"They gave us the name of Boston Old Colony.

"We made contact with Boston Old Colony and found out through them that they had this Porsche with the VIN number involved in an accident, and that three-fourths of the front end had been damaged.

"They had a repair estimate of over $10,000 on the vehicle, and they had sold the vehicle for salvage to Sharon Repair out of New York and had received $18,000 for the salvage of the 1980 Porsche."

[3] Alvin Lindeman testified that he was not an employee of Bank One of Ravenna at the time of the occurrence of many events in the case at bar, but rather was brought in as an auditor in this particular case on September 30, 1983. Lindeman offered details about Bank One's financial relationship with Auto Cars prior to September 30, 1983, as the following testimony concerning 1982 events illustrates:

"Q[:]  What was it that caused Bank One of Ohio to maintain its relationship with Auto Cars, Inc.?

"Mr. Coyne:  Objection.

"A[:]  They brought in two new investors, Mr. DeMarco and Mr. Bruner.

"Q[:]  But for those two people coming into Auto Cars, Bank One would have stopped all business with Auto Cars, is that correct?

"A[:]  That's correct."

[4] Detective Kingzett's testimony contained passages such as the following:

"Q[:]  During 1981, 1982 or thereabouts, did you have occasion to investigate Auto Cars, Incorporated?

"A[:]  Yes, sir.

"* * *

"Q[:]  As a result of that investigation, sir, was the County Prosecutor's office, the Police Department, the State of Ohio, capable of having indictments returned against participants with Auto Cars, Incorporated?

"* * *

"A[:]  Yes, it has.

"Q[:]  Are you aware of the number of indictments that were returned against people with regard to Auto Cars, Inc.?

"* * *

"A[:]  I believe there were close to 125 indictments.

"Q[:]  And do you know the number of people, the number of persons, persons meaning individual people or corporations, that were named in those indictments?

"* * *

"A[:]  Between 12 and 14, I believe."

viction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial.

## III

Our final inquiry concerns the sufficiency of evidence to convict appellant of the crimes charged. Appellant argues that the prosecution failed to present sufficient evidence to support his conviction for two counts of attempted grand theft in violation of R.C. 2913.02 and 2923.02, and his conviction for one count of possessing a proof of loss affidavit as a criminal tool, in violation of R.C. 2923.24.

We find that there was sufficient evidence to convict appellant of the crimes charged; however, the errors noted above require a new trial. Thus, we must reverse the judgment of the court of appeals. This cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOAN, WRIGHT and H. BROWN, JJ., concur.

HOLMES and DOUGLAS, JJ., dissent.

DOAN, J., of the First Appellate District, sitting for SWEENEY, J.

FORD, J., of the Eleventh Appellate District, sitting for LOCHER, J.

DOUGLAS, J., dissenting. I respectfully dissent from the foregoing analysis of the majority.

I believe today's opinion will cause unnecessary confusion regarding the continued viability of the harmless error doctrine as enunciated in *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323. The majority's decision contradicts the holding of that landmark decision, yet leaves the reader to question, totally without guidance, whether *Williams* is still good law.

In paragraphs three and six of the syllabus in *Williams, supra,* this court stated:

"To be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt."

"Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt."

Thus, even where *constitutional error* has been committed, such error is harmless beyond a reasonable doubt if the remaining evidence constitutes overwhelming proof of the defendant's guilt. The record in the case now before us reveals that any error which may have occurred during the course of appellant's trial was harmless beyond a reasonable doubt.

Initially, the court of appeals correctly noted, and a review of the record shows, that the vast majority of the hearsay evidence admitted in this case was cumulative of other properly admitted evidence. Thus, while the admission of such evidence was error, it clearly was not, and the majority readily admits, prejudicial.

Moreover, the record reflects that appellant actively participated in the "scheme" to steal the 1980 Porsche. Appellant, on behalf of Richmond Associates, filed a fraudulent insurance claim for $30,000 with Aetna. Appellant additionally signed a sworn proof of loss statement and gave a tape-recorded statement to the Aetna claims adjuster,[5] in which he represented

---

[5] The tape-recorded statement given by appellant to the Aetna claims adjuster provided in part:

"* * *

"Q. Okay, Dr. DeMarco, we insure you under a business auto policy O2FJ237397CCA uh, the name insured on the policy is Richmond Associates, is that correct?

"A. Yes.

"* * *

"Q. Okay, and what is your capacity in the association, sir?

"A. Uhm, the Richmond Associates is a corporation, I'm the president of that corporation.

"Q. Alright, uh, it is my understanding that you had leased this involved vehicle from Commercial Commerce Leasing?

"A. Yes.

"* * *

"Q. Okay, uh can you tell me some of the details involving the theft of the vehicle.

"A. Yes, the car was, uh, I asked Dennis Dunagan to pick up the car and he was to, we was trying to market the car to sell it before the lease was up and he uh, was in Pittsburgh with the automobile and, uhm, he was to meet prospective people at the Holiday Inn and was in using the telephone and, uh, when he came out the car was stolen. He was inside for a period of hours, I guess, it said in the police report.

"* * *

"Q. Alright, can you tell me something about him, uh, what is his capacity with the —

"A. Uh, he works for another company, uhm, and he deals with cars all the time, and he's a friend and I asked him because he knew some people in Pittsburgh that he could sell the car to, and uh, he was getting in touch with them trying to sell it.

"* * *

"Q. Okay, uh, and you had a number of buyers, prospective buyers, there in the Pittsburgh area?

"A. Right.

"* * *

"Q. Okay, alright, uh, can you tell me if there is any involvement between Commercial Commerce Leasing, and any of the officers of Richmond and Associates?

"A. No, none.

"Q. None whatsoever?

"A. No.

"Q. Uh, is it, has there been any prior transactions between the two organizations before?

"A. No.

"Q. Okay, uh, we have been able to determine that your lease on this vehicle started in August of '82, we have been told by your agency that you did not take out insurance on the vehicle until 1-24-83. Can you tell me where the insurance coverage was on the vehicle during this period of August to January?

that he had driven the Porsche to New York City so that the front-end damage could be repaired, stored the repaired vehicle in his mother's garage for four months following the repairs and had personally instructed an Auto Cars, Inc. employee to retrieve the Porsche from New York, drive it to Pittsburgh and sell it to potential buyers in Pittsburgh.

However, the record reveals that the Porsche was totally undrivable. The car had suffered such severe front-end damage that it could be transported only by a vehicle carrier. The record further shows that the Porsche was not in a drivable condition when appellant and Richmond Associates, in which appellant was a shareholder, leased the vehicle in 1982. Additionally, the record reveals that appellant did not drive, supervise or arrange to have the Porsche transported to New York for repairs and subsequent storage in his mother's garage. Finally, appellant did not direct the employee to take the car to Pittsburgh. The record clearly reflects that appellant did not know the employee was in Pittsburgh until the same employee *returned* from Pittsburgh and related the "facts surrounding the theft" to appellant.

Therefore, while error did occur when certain hearsay evidence was admitted, that evidence was cumulative of other properly admitted evidence and therefore not prejudicial. Further, notwithstanding the admission of the tainted evidence, the properly admitted evidence constituted overwhelming evidence of appellant's guilt and therefore was harmless beyond a reasonable doubt. Accordingly, I would affirm the judgment of the court of appeals and thereby affirm appellant's conviction.

HOLMES, J., concurs in the foregoing dissenting opinion.

---

"A. Uh, there wasn't any. The car was stored in a garage, there was no need to insure it.

"Q. Okay, uh, where was it stored?

"A. In New York.

"* * *

"Q. Okay, who had the vehicle in New York, uh, was it someone from your association who had the vehicle in New York, or —

"A. No, it was at my mother's house. She lives in Long Island.

"Q. Okay, but you, you picked up the vehicle from the lease company here in Cleveland and then drove it to New York?

"A. Yes.

"Q. Okay, and when? January, December, January you picked the vehicle up from New York and brought it back to Ohio?

"A. No, it wasn't brought until, he had just picked it up, when was it, May? It was just picked up in May.

"Q. Okay, so —

"A. It really wasn't in Ohio at all.

"Q. The vehicle was never in Ohio.

"A. Well, it was here originally, sure. You know, and uh, it needed, what happened was it needed some repairs on the front end which was [sic] done in New York and it was put in the mother's garage and left there, so.