OPINION *Page 2 
{¶ 1} Appellant Joshua P. Varney appeals his conviction, in the Perry County Court of Common Pleas, on five felony counts, including attempted aggravated murder. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} On June 16, 2007, appellant's parents, Frank and Ella Varney, were convicted of felony receiving stolen property and obstruction of justice in the Hocking County Court of Common Pleas. A key witness for the prosecution in that case was Richard Fox, who resided on Township Road 175, Junction City, in Perry County.
 {¶ 3} Also on June 16, 2007, Ben Harris, an acquaintance of appellant, retrieved three handguns from Kristopher Varney, appellant's brother, who had hidden them near the Varney driveway. Harris then hid the firearms under a bridge. That night, Harris, Kristopher Varney, and appellant met with a fourth person, sixteen-year-old Christopher McCabe, and proceeded in McCabe's automobile to New Lexington to get gas. McCabe then drove the group to the bridge where the handguns, a .22, a .38, and a .380, respectively, had been hidden.
 {¶ 4} According to McCabe and Harris, at about 2:00 AM on June 17, 2007, the four men arrived at the mobile home residence of Fox, which sat parallel to and about thirty feet from Township Road 175, at which time Harris, Kristopher, and appellant began shooting from the car through an open passenger window. At the time the shooting commenced, Fox was asleep with his fiancée in the main bedroom, while his fiancée's daughter slept nearby on a little mattress. A porch light was on, and two vehicles were parked in front of Fox's garage. No one was physically injured in the *Page 3 
incident; however, investigators found fourteen bullet holes or strikes on Fox's mobile home.
 {¶ 5} Appellant, Kristopher, and Harris were stopped by sheriff deputies that night after returning to appellant's car, and thereafter brought in for questioning. Appellant was charged with attempted aggravated murder, felonious assault, retaliation against a witness, improper handling of a firearm in a motor vehicle, and improperly discharging a firearm at or into a habitation.
 {¶ 6} The case proceeded to a two-day jury trial, jointly trying appellant and Kristopher, on December 10 and 11, 2007. The jury found appellant guilty of all offenses as charged. A sentencing hearing was conducted on February 4, 2008, following a pre-sentence investigation. Appellant was sentenced on February 13, 2008 to an aggregate term of twenty-four years in prison.
 {¶ 7} On March 13, 2008, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:
 {¶ 8} "I. THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT TO CONSECUTIVE SENTENCES FOR ATTEMPTED AGGRAVATED MURDER WITH TWO FIREARM SPECIFICATIONS AND FELONIOUS ASSAULT AND EXCEEDED THE SENTENCING AUTHORITY GRANTED TO IT BY THE LEGISLATURE.
 {¶ 9} "II. THE TRIAL COURT ERRED WHEN IT SENTENCED THE APELLANT (SIC) TO CONSECUTIVE SENTENCES FOR IMPROPERLY HANDLING A FIREARM IN A MOTOR VEHICLE AND FOR DISCHARGING A FIREARM FROM A MOTOR VEHICLE. *Page 4 
 {¶ 10} "III. THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 11} In his First Assignment of Error, appellant maintains the trial court erred in rendering consecutive sentences for attempted aggravated murder with firearm specifications and felonious assault. We agree.
 {¶ 12} R.C. Section 2941.25(A) provides as follows:
 {¶ 13} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 14} In State v. Cabrales, 118 Ohio St.3d 54, syllabus,884 N.E.2d 181, 2008-Ohio-1625, the Ohio Supreme Court instructed as follows:
 {¶ 15} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import."
 {¶ 16} Prior to Cabrales, the leading case in Ohio regarding the test for determining whether crimes are allied offenses of similar import wasState v. Rance, 85 Ohio St.3d 632, 710 N.E.2d 699, 1999-Ohio-291. The Supreme Court in Cabrales noted that some appellate courts have incorrectly applied Rance's "abstract elements *Page 5 
comparison test" by conducting a "strict textual comparison" of the elements under R.C. 2941.25(A). State v. Mosley, Cuyahoga App. No. 90706,2008-Ohio-5483, ¶ 31, citing Cabrales at 59, 886 N.E.2d 181. Thus,Cabrales has engendered a more "holistic" or "pragmatic" approach to the question of offenses of similar import. See State v. Williams, Cuyahoga App. No. 89726, 2008-Ohio-5286, ¶ 31; State v. Sutton, Cuyahoga App. No. 90172, 2008-Ohio-3677, ¶ 89.
 {¶ 17} Recently, the Ohio Supreme Court revisited this issue inState v. Brown, 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569. The Court stated that "[t]he legislative history of R.C. 2941.25
demonstrates that the basic thrust of the section is to prevent `shotgun' convictions." Id. at ¶ 16, citing Legislative Service Commission Summary of Am. Sub. H.B. 511, The New Ohio Criminal Code (June 1973) 69, internal quotations omitted. In Brown, the Supreme Court expanded the aforecited first step of the allied offense analysis by "add[ing] the additional factor of societal interests protected by the statutes, which the court held should also be considered as part of the analysis of whether offenses are `of similar import' or of `dissimilar import.'" State v. Boldin, Geauga App. No. 2007-G-2808, 2008-Ohio-6408, ¶ 92, citing Brown at ¶ 35-36.
 {¶ 18} In the case sub judice, starting with the less serious offense of the two, felonious assault, we note R.C. 2903.11(A)(2) states: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 19} The second offense to be analyzed in the case sub judice, attempted aggravated murder, is addressed in the following Revised Code provisions: *Page 6 
 {¶ 20} R.C. 2903.01(A) states: "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 21} R.C. 2923.02(A) states: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 22} Appellant acknowledges this Court has previously held(pre-Cabrales) that attempted murder and felonious assault are allied offenses of similar import. See State v. Myers, Perry App. No. 01-CA-5, 2002-Ohio-253. Appellant urges that the case sub judice is distinguishable in that his attempted aggravated murder conviction includes a firearm specification.
 {¶ 23} Thus, we find the question boils down to the following: Comparing in the abstract, but avoiding a strict textual comparison, and considering the societal interests protected by the statutes, is the crime of knowingly attempting to cause physical harm to another by means of a deadly weapon an allied offense of similar import to the crime of attempting to purposely, and with prior calculation and design, cause the death of another with a firearm? We answer that question in the affirmative. A common sense approach, as indicated by Cabrales, leads us to the conclusion that both statutes as set forth are meant to protect persons from violent injury or death caused by another person armed with a weapon, especially a firearm.
 {¶ 24} Our analysis is not yet complete, however. The Supreme Court inCabrales further outlined the "second step" in the analysis, to be applied if a court has initially determined that two crimes are allied offenses of similar import: *Page 7 
 {¶ 25} "In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." Cabrales at 57, citing State v.Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, emphasis sic.
 {¶ 26} In the case sub judice, the drive-by shooting at issue was essentially a contemporaneous felonious assault and attempted aggravated murder with a firearm, stemming from a retaliation against a witness in a trial involving appellant's parents. Upon review, we find the two crimes were not committed separately and that there was not a separate animus for each.
 {¶ 27} We therefore hold the trial court erred in rendering consecutive sentences for attempted aggravated murder with firearm specifications and felonious assault, as they are crimes of similar import.
 {¶ 28} Accordingly, appellant's First Assignment of Error is sustained.
 II. {¶ 29} In his Second Assignment of Error, appellant argues the trial court erred in rendering consecutive sentences for improperly handling a firearm in a motor vehicle and for the specification of discharging a firearm from a motor vehicle. We disagree.
 {¶ 30} Appellant was convicted, inter alia, of violating R.C. 2923.16(A), which states "[n]o person shall knowingly discharge a firearm while in or on a motor vehicle." Appellant was also found guilty under a specific firearm specification, in conjunction with the charges of attempted aggravated murder and felonious assault, "committed by discharging a firearm from a motor vehicle * * *." See R.C. 2941.146(A). *Page 8 
 {¶ 31} We first note that a firearm specification is not a separate offense and thus cannot be an allied offense of similar import for purposes of R.C. 2941.25. State v. Blankenship (1995),102 Ohio App.3d 534, 547, 657 N.E.2d 559, citing State v. Ramos (Apr. 16, 1987), Cuyahoga App. No. CA-52061. The issue actually before us, therefore, is whether attempted aggravated murder and felonious assault, in conjunction with the 2941.146 specification finding, are allied offenses of similar import vis-à-vis the basic offense of improper handling of a firearm in a motor vehicle. In making an analysis pursuant toCabrales, supra, we hold they clearly are not.
 {¶ 32} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 33} In his Third Assignment of Error, appellant contends his conviction for attempted aggravated murder was against the manifest weight of the evidence. We disagree.
 {¶ 34} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717. *Page 9 
 {¶ 35} In the case sub judice, the State's theory of the case, as supported by the testimony of Chris McCabe, who drove the car, and Ben Harris, one of the shooters who had previously pled to a lesser charge of retaliation, was that the four young men went to Fox's residence in McCabe's Ford after stopping to retrieve the three handguns hidden under the bridge. The State presented that there were three guns (a .22, a .380, and a .38) and three shooters, appellant, co-defendant Kristopher, and Harris, all of whom had gunshot residue on their hands. Despite appellant's present protestations that darkness would have made aiming at specific areas of Fox's trailer difficult, Fox testified that the striking bullets were concentrated near the main bedroom. Tr. at 28. Fox also recalled that Kristopher had been inside the mobile home once before, on a visit with Frank Varney. Tr. at 35. BCI investigator Jeffrey Cook found fourteen rounds had struck the trailer, with at least six of them passing through into the interior. The State also presented evidence that McCabe's car was later found burned near an abandoned ice house in Logan, Ohio. A number of .22, .380, and .38 shell casings were found on the roof of the ice house. The .22 casings matched the handgun recovered from McCabe (the only gun recovered). BCI investigators determined that the .38 casings had all been fired from the same gun. They also determined that the .380 casings from the ice house, as well as .380 casings found in McCabe's car and Fox's yard were fired from the same gun. In similar fashion, spent bullets from inside the mobile home were analyzed, and those results were presented to the jury. Furthermore, in regard to motive, it is undisputed that appellant's parents had been convicted on felony charges in Hocking County just one day before the shooting, based on key testimony against them by the present victim, Fox. *Page 10 
 {¶ 36} Although appellant did not testify, Kristopher maintained that McCabe and Harris were the only shooters, and that he and appellant simply got caught up in the situation, despite the gunshot residue evidence. Tr. at 285-306. However, because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 37} Appellant also specifically maintains that there was no evidence of prior discussions between appellant and the three other participants regarding a plan to go to Fox's residence for the purpose of killing him. However, Harris testified that appellant and Kristopher discussed "want[ing] to shoot at a Richard Fox's house" on the evening of June 16th . Tr. at 135. Although some of the evidence in this regard may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. See, e.g.,State v. Pryor, Stark App. No. 2007CA00166, 2008-Ohio-1249, ¶ 34, citingState v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 38} Upon review of the record in this case, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered. *Page 11 
 {¶ 39} Accordingly, appellant's Third Assignment of Error is overruled.
 {¶ 40} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Perry County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
 Wise, J., Gwin, P. J., and Delaney, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Perry County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion..
 Costs to be split equally between Appellant and State of Ohio. *Page 1