[Cite as *State v. Fannin*, 2011-Ohio-3211.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | William B. Hoffman, P.J. |
|  | : | Julie A. Edwards, J. |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : | Case No. 10CAA030028 |
|  | : |  |
|  | : |  |
| TOBIAS D. FANNIN | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:      Criminal Appeal from Delaware
County Court of Common Pleas Case
No. 08-CR-I-09-0461

JUDGMENT:      Affirmed In Part and Reversed and
Remanded In Part

DATE OF JUDGMENT ENTRY:      June 22, 2011

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

DAVID YOST          WILLIAM T. CRAMER
Delaware County Prosecuting Attorney      470 Olde Worthington Road, Ste. 200
Delaware County, Ohio          Westerville, Ohio  43082

BY: BRENDAN INSCHO
Assistant Prosecuting Attorney
140 North Sandusky Street
Delaware, Ohio  43015

*Edwards, J.*

{¶1}   Appellant, Tobias Fannin, appeals a judgment of the Delaware County Common Pleas Court convicting him of seven counts of burglary (R.C. 2911.12(A)(3)), seven counts of theft (R.C. 2913.02(A)(1)), and ten counts of receiving stolen property (R.C. 2913.51).  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND CASE

{¶2}   On July 26, 2008, a daytime burglary occurred at the residence of the Rigney family in Delaware, Ohio, while the Rigneys were at a picnic.  There were no signs of forced entry; however, the Rigneys' daughter admitted to possibly leaving the front door unlocked.  The only room in the house that appeared to be untouched was the bedroom of the Rigneys' teenage son.  Bedroom dressers were emptied on the floor and desk drawers in their home office had been gone through.  Three laptop computers, an X-box game system, two televisions and several DVDs were taken from the house.

{¶3}   A daytime burglary occurred at the home of Alice Walter in Delaware on July 27, 2008.   Ms. Walter went to the grocery store around 11 am, and when she returned an hour later she discovered that a glass panel in a side door of her home had been broken with a brick.  Drawers were pulled out and emptied on the floor throughout the house and a 32-inch flat screen TV, digital camera, telephone and jewelry were missing.

{¶4}   On the same day, a burglary took place at the Wolford home in Delaware. A French door was kicked open to gain access to the home.  A desktop computer, two laptop computers, a digital video camera, a Playstation 2 game system with 40 games,

and 50-60 DVD's were stolen.  A small fire safe was broken open using a dumbbell and the papers were scattered.

{¶5}    Gail Hoskins returned to her home on August 2, 2008, to discover someone had gained access to her home by breaking a window on the back side of the house.  Cabinet doors were opened and items scattered on the floor.  An entertainment center was pulled off the wall.  The Hoskins home was missing a 42 inch plasma screen television, a DVR recorder, a DVD burner, a DVD player, a stereo receiver and speakers, remote controls, a ring, suitcases, and a professional camera.

{¶6}    On August 4, 2008, the Tracewell residence was broken into while the homeowners were at work.  The home was entered through a first floor window in the rear of the house.  The window was not fully closed and the perpetrator pushed in the screen to gain access to the home.  Dozens of DVDs and CDs were missing from the home, including CDs that were unique concert recordings.  The perpetrators also stole gym bags, credit cards, an I-pad, a laptop, a digital camera and docking station, and a jar full of pennies.  A neighbor reported to police that he saw a heavy-set bald man with a bushy goatee ring the Tracewells' doorbell, then walk around to the back of the house.

{¶7}    The same day a burglary occurred at the home of the Rosenbaums.   A pane of glass in the back door was broken to gain entry to the home.  From the home the burglar stole CDs, DVDs, jewelry, luggage, a flat screen TV, a laptop computer, a new I-Pod, a digital camera and a bank debit card.  A 1993 Mazda RX-7 automobile was stolen from the garage.

{¶8}    On August 6, 2008, the home of Judge David Cain was broken into while the Cains were on vacation.  The Cains' daughter stopped to check on the house and

discovered that a window panel had been broken by a concrete rabbit. A briefcase, jewelry, $600.00 in cash and a credit card were stolen from the home.

{¶9}    When the Rosenbaums called to cancel their credit card, they discovered it had already been used at a Kroger grocery store in Franklin County, a Speedway gas station in Delaware, and a Kroger store in Delaware. Security videos showed a person resembling appellant using the card at all three locations and showed the same person getting gas in what appeared to be the Rosenbaums' green Mazda. The Cains' credit card had also been used at a Kroger grocery and at a Get-Go gas station in Delaware. Security videos showed a person who looked like appellant using the card and putting gas in a red Ford Ranger pickup truck.

{¶10}  The clerk at the Kroger in Delaware was able to pick appellant from a photo lineup. She remembered appellant because he attempted to purchase a large number of items at the U-scan line, which the clerk was monitoring. Appellant's credit card was initially rejected. Appellant then left the store and the clerk returned his groceries to the shelves. Appellant returned a second time and had the clerk continue to void items from his bill until it was down to an amount he could pay for in cash. In addition, the Tracewells' neighbor identified a photograph of appellant as the man he saw at their home on the day of the burglary.

{¶11}  Police investigation centered in on the Cash To Go pawnshop in Columbus. Pawn tickets signed by appellant listed property stolen from the Cain and Rosbenbaum residences, and the Rosenbaums' green Mazda was abandoned outside the pawnshop.

{¶12} Police in Delaware received a call concerning an unwanted person in a residence at 566 Jefferson Dr., within a short distance of three of the burglaries. Officer Aaron Chance Kuck responded to the call and spoke with Jessica Gladden. The person Jessica wanted removed from her home was appellant, but appellant had left before police arrived. Officer Kuck noted a number of high-end electronic items in the residence, some matching the descriptions of property stolen in the rash of burglaries. Eventually police were able to trace pieces of property stolen from the Rigney, Walter and Wolford residences to Gladden's home.

{¶13} Appellant was apprehended in the morning of August 13, 2008, attempting to break into a home near the Cain and Hoskins residences. However, the owner was home, and when she saw appellant taking her mail, she confronted him. She called the police and appellant was apprehended a short distance away.

{¶14} Following his arrest, appellant was in jail with Romero Bing. Appellant told Bing that he had burglarized several houses, including a judge's house. He told Bing he would knock on the door to see if anyone was home, and if not, he would force entry. He told Bing he took televisions and jewelry. He admitted to taking a small green Honda or Nissan and leaving it in a pawnshop parking lot because police were nearby. He also told Bing he sold some of the goods to a pawn shop and gave some to his girlfriend, who he had been living with. Appellant also described how he changed his appearance by growing out his hair.

{¶15} Appellant was indicted by the Delaware County Grand Jury with seven counts of burglary (R.C. 2911.12(A)(3)), seven counts of theft (R.C. 2913.02(A)(1)), and

ten counts of receiving stolen property (R.C. 2913.51). The case proceeded to jury trial in the Delaware County Common Pleas Court.

{¶16} At trial, Jessica Gladden testified that appellant lived with her for about a month and a half in the summer of 2008. He would bring computers, televisions and other items home. He told Gladden that he took the items. He used her red pickup truck because he was unemployed. Although Gladden knew the items were stolen, Gladden paid appellant $300.00 for a Dell laptop and her aunt paid him $200.00 for a flat screen television. Appellant told Gladden he took some of the items to a man named "Roger" in Toledo. Roger would then send appellant money orders for the items.

{¶17} Appellant was convicted on all charges. He was sentenced to an aggregate prison term of 36 years, four months. He assigns five errors on appeal:

{¶18} "I. APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS, AND SECTION 10, ARTICLE I, OHIO CONSTITUTION BECAUSE TRIAL COUNSEL FAILED TO CHALLENGE THE JOINDER OF THE UNRELATED BURGLARY CHARGES.

{¶19} "II. THE TRIAL COURT ERRED BY PERMITTING THE PROSECUTION TO USE APPELLANT'S SUBSEQUENT ATTEMPTED BURGLARY CONVICTION AS PROOF OF IDENTITY UNDER EVID.R. 404(B).

{¶20} "III. THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION TO ELICIT PREJUDICIAL EVIDENCE THAT THE VICTIM OF THE ATTEMPTED BURGLARY WAS A SICK, ELDERLY WOMAN, WHO WAS NERVOUS AND SCARED.

**{¶21}** "IV. APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS, AND SECTION 10, ARTICLE I, OHIO CONSTITUTION BECAUSE TRIAL COUNSEL NEEDLESSLY ELICITED TESTIMONY THAT APPELLANT HAD THREATENED TO KILL A WITNESS, HER HUSBAND, AND HER CHILDREN.

**{¶22}** "V. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND PROTECTION FROM DOUBLE JEOPARDY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND SECTIONS 10 & 16, ARTICLE I, OHIO CONSTITUTION WHEN IT IMPOSED SENTENCE FOR THE ALLIED OFFENSES OF THEFT AND RECEIVING STOLEN PROPERTY IN REGARD TO THE SAME PROPERTY."

I

**{¶23}** In his first assignment of error, appellant argues counsel was ineffective for failing to move to sever.

**{¶24}** A properly licensed attorney is presumed competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

{¶25} Ohio Criminal Rule 8 (A) governs joinder of offenses, and provides:

{¶26} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶27} Criminal Rule 14 governs relief from prejudicial joinder, and states:

{¶28} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

{¶29} Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. *State v. Schaim* (1992), 65 Ohio St.3d 51. Joinder of offenses solely because they are of the same or similar character creates a greater risk of prejudice to the defendant, while the benefits from consolidation are reduced because "unrelated offenses normally involve different times, separate locations, and distinct sets of witnesses and victims." *Id.* When a defendant claims he or she was prejudiced by the

joinder of multiple offenses, the court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct. *Schaim,* supra, at 59. The defendant bears the burden of proving prejudice and that the trial court abused its discretion in denying severance. Id.

{¶30} Appellant argues that he was prejudiced by joinder of the offenses because the evidence was stronger on the counts related to the Cains and Rosenbaums than on the counts related to the other victims.

{¶31} Appellant does not argue on appeal that any of the convictions were against the manifest weight or sufficiency of the evidence. The evidence related to each victim was simple and distinct and presented in a way to ensure that the jury understood the separate victims and charges. Prior to opening statements, the court gave the jury a "cheat sheet" which listed the names of the property owners, their addresses, and the counts that related to each victim. Tr. 16. In opening statement, the State explained to the jury that there were seven different victims who would testify about responding to the scene, the condition they found their homes in and the layout of their homes. Tr. 41. The prosecutor explained that there would then be a second set of witnesses who would talk about the investigation and how the State could tie the crimes to the appellant. Tr. 41-42. Id. The prosecutor stated, "Yes, there are a number of charges, but if you all listen closely and if we just follow each of the witnesses it is really not a terribly complicated case." Tr. 41.

{¶32} The state then presented the testimony of each of the victims. Each victim was followed by the testimony of the officer who responded to that crime scene.

Following the presentation of the victims' testimony, the testimony of the investigating officers and others who could connect appellant to the crimes was presented. Finally, the court instructed the jury that each of the charges set forth in the indictment constitutes a separate and distinct matter, and the jury must consider each charge and the evidence applicable to each charge separately. Tr. 950-51. The judge further explained that the jury's finding as to each charge must be uninfluenced by their verdict on the other charges. Tr. 951.

{¶33} Appellant has not demonstrated that counsel was ineffective for failing to move to sever, as a severance motion could properly have been overruled by the trial court. The first assignment of error is overruled.

II

{¶34} In his second assignment of error, appellant argues that the court erred in admitting evidence of his attempted burglary on August 13, 2008, as proof of identity.

{¶35} Officer Christopher Ruh testified that Mrs. Shirkey called the police to report that a man had attempted to break into her home. She saw the man grab a piece of mail out of her box and put it in his pocket. She told him to stop and put the mail back. The man began walking down the street, where he was apprehended by Ruh. Mrs. Shirkey identified appellant after police apprehended him.

{¶36} The trial court gave a limiting instruction regarding the use of evidence concerning the commission of a crime other than the offenses with which appellant was charged, both before the testimony was presented and in the court's final instructions. Tr. 669, 882. The jury was instructed to consider the evidence only for the purpose of

deciding whether it proves identity and not to prove appellant's character or to show that he acted in conformity with that character.  Id.

**{¶37}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court.  *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343.  Any error in the admission of evidence must be analyzed under an abuse of discretion standard of review. "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

**{¶38}** Evid. R. 404(B) provides:

**{¶39}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶40}** Because Evid.R. 404(B) codifies an exception to the common law with respect to evidence of other acts of wrongdoing, it must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. See *State v. Broom* (1988), 40 Ohio St.3d 277, 281-282, 533 N.E.2d 682, citing *State v. Burson* (1974), 38 Ohio St.2d 157, 158-159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 528; *State v. DeMarco* (1987), 31 Ohio St.3d 191, 194, 31 OBR 390, 392, 509 N.E.2d 1256, 1259. Neither the rule nor the statute contains the words "like" or "similar." Id. at 282. The rule and statute contemplate acts which may or may not be similar to the crime at issue.  Id.  If the other act does in fact "tend to show" by substantial proof any of the

things enumerated, including identity, then evidence of the other act may be admissible. Id.

{¶41} In the instant case, the evidence did not tend to show identity by substantial proof. The attempted burglary bore a general resemblance to the charged offenses only in that the crime occurred during the daytime and in the same geographical area as some of the other burglaries. In the attempted burglary, appellant was confronted when he took a piece of the victim's mail, and he then left the residence. In all the other burglaries, the homes were entered, electronic items were taken, and belongings and papers were scattered throughout the house. We therefore find the court erred in admitting this evidence under Evid. R. 404(B). However, we find any error in its admission to be harmless.

{¶42} Crim. R. 52(A) defines harmless error:

{¶43} "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

{¶44} The test for determining whether the admission of inflammatory or otherwise erroneous evidence is harmless requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. *State v. Riffle,* Muskingum App. No. 2007-0013, 2007-Ohio-5299 at ¶ 36-37 (Citing *State v. Davis* (1975), 44 Ohio App.2d 335, 347, 338 N.E.2d 793).

{¶45} In the instant case, the evidence concerning the attempted burglary involved one witness over the course of a long trial. Evidence had been produced concerning each of the other burglaries, the items taken, the course of the investigation

leading to appellant, the items taken from Gladden's apartment and linked back to the victims, appellant's admission to Gladden that he took the items and sold them through a man named Roger in Toledo, appellant's admissions in prison to Romero Bing, appellant's signature on pawn tickets in Columbus, and the surveillance videos showing appellant using the credit cards taken from the Rosenbaum and Cain residences.

**{¶46}** The second assignment of error is overruled.

III

**{¶47}** In his third assignment of error, appellant argues that the characterization of the victim of appellant's attempted robbery as an elderly woman who was nervous and scared should have been excluded under Evid. R. 403(A), as its probative value was outweighed by the danger of unfair prejudice.

**{¶48}** The following colloquy occurred during the questioning of Officer Ruh:

**{¶49}** "Q. Okay. Can you tell us what the homeowner, what was her demeanor like when you arrived on the scene?

**{¶50}** "A. She was - -

**{¶51}** "MR. JONES: Objection.

**{¶52}** "THE COURT: Overruled.

**{¶53}** "MR. JONES: Relevance.

**{¶54}** "THE COURT: You can go ahead and answer the question, Officer.

**{¶55}** "THE WITNESS: She was nervous. She was scared. She hasn't - - she's been sick so she was afraid, too, at the same time.

**{¶56}** "Q. Is this an older lady?

**{¶57}** "A. Yes." Tr. 676.

**{¶58}** Evid. R. 403(A) provides:

**{¶59}** "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶60}** In assignment of error two, we found harmless error in admission of evidence concerning the attempted burglary. Because we have found the court erred in admitting this other acts evidence on the issue of identity, the court likewise erred in admitting this evidence concerning the victim's demeanor. However, we find any error is harmless. The comments concerning the victim's demeanor were short and of minor consequence over the course of a long trial. She was not a victim in any of the cases being tried, and there was no evidence that appellant knew that she was elderly and sick and preyed on her because of her condition. Any error in admitting the description of the victim's mental and physical state was harmless.

**{¶61}** The third assignment of error is overruled.

IV

**{¶62}** In the fourth assignment of error, appellant argues counsel was ineffective for eliciting testimony from Jessica Gladden that appellant had threatened to kill her in the past.

**{¶63}** A properly licensed attorney is presumed competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington* (1984),

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136.   In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   Id.

**{¶64}** Jessica Gladden testified on direct examination that appellant attempted to contact her around 10 times the night before her trial testimony, calling every 3-4 minutes.   Tr. 182.   She testified that she had previously changed her phone number because appellant would not stop calling her. Tr. 183.

**{¶65}** Counsel for appellant then elicited the following testimony from Gladden on cross-examination:

**{¶66}** "Q. You claimed on direct that Mr. Fannin threatened your life, didn't you?

**{¶67}** "A. Yes, sir.

**{¶68}** "Q. And he made those threats, according to you, he made those threats back in 2008; correct?

**{¶69}** "A. 2009.

**{¶70}** "Q. You told the detectives that he threatened your life back in 2008?

**{¶71}** "A. When he told me that if I told on him that he would get me, is what I told the cops.

**{¶72}** "Q. You told them that back in 2008, didn't you?

**{¶73}** "A. Yeah.   Summer of 2009 he found out I was pregnant, he told me that he would kill me, my kids and he would kill my husband.

**{¶74}** "Q. You also told the detectives that he threatened your child's life back in 2008, didn't you? You told the detectives you had a voice mail of him making those threats?

**{¶75}** "A. Yes, sir.

**{¶76}** "Q. You never gave them the voice mail?

**{¶77}** "A. I gave them my phone when they asked for it.

**{¶78}** "Q. But at the time he made those threats you never called the police either, did you?

**{¶79}** "A. No. I was scared to.

**{¶80}** "Q. You never had him charged with anything as a result of that?

**{¶81}** "A. No. I was afraid to.

**{¶82}** "Q. So, you wasn't (sic) afraid for your life, you were afraid for your child's life; correct?

**{¶83}** "A. Yes.

**{¶84}** "Q. You had a mountain of stolen property in your apartment; correct?

**{¶85}** "A. Yes.

**{¶86}** "Q. You never found it appropriate to go to the police with these facts?

**{¶87}** "A. I was afraid to go to the police." Tr. 201-202.

**{¶88}** While counsel's motivation for eliciting this evidence is unclear, it appears counsel was attempting to demonstrate that Jessica Gladden was of questionable character. Counsel also questioned appellant regarding her romantic entanglements with other men while her husband was serving in the military, and her own involvement with the stolen merchandise found in her apartment. Counsel may have been trying to

undermine Gladden's credibility by showing to the jury a woman who didn't go to police or sever the relationship with appellant when he threatened her child's life, who accepted a mountain of stolen goods in her residence and who cheated on a husband serving in the military. Appellant has not demonstrated that counsel's performance fell below a standard of reasonable representation.

**{¶89}** Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel not questioned Gladden regarding threats appellant made against her and her family. While Gladden was a key witness in that she testified that appellant admitted to taking the items found in her apartment, police were able to link items found in the apartment to various burglaries under investigation. The State presented evidence that appellant admitted to burglarizing houses to Romero Bing, giving specific details as to how and when he broke into homes. The state produced evidence of appellant's signature on pawn tickets in Columbus, and the surveillance videos showed appellant using the credit cards taken from the Rosenbaum and Cain residences. Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel not pursued this line of questioning with Gladden.

**{¶90}** The fourth assignment of error is overruled.

V

**{¶91}** In his fifth assignment of error, appellant argues that the court erred in sentencing him for both receiving stolen property and theft regarding the same property. We agree.

**{¶92}** R.C. 2941.25 provides:

**{¶93}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶94}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶95}** In *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 1999-Ohio 291, the Ohio Supreme Court held that offenses are of similar import if the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* The *Rance* court further held that courts should compare the statutory elements in the abstract. *Id.*

**{¶96}** In further clarifying *Rance,* the Court, in *State v. Cabrales,* 118 Ohio St.3d 54, 886 N.E.2d 181, 2008-Ohio-1625, syllabus, instructed as follows:

**{¶97}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import."

{¶98} According to *Cabrales,* the sentencing court, if it has initially determined that two crimes are allied offenses of similar import, then proceeds to the second part of the two-tiered test and determines whether the two crimes were committed separately or with a separate animus. *Id.* at 57, 886 N.E.2d 181, citing *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816.

{¶99} This Court has referred to the *Cabrales* test as a "common sense approach." *State v. Varney,* Perry App. No. 08-CA-3, 2009-Ohio-207, ¶ 23. In *State v. Whitfield,* 124 Ohio St.3d 319, 922 N.E.2d 182, 2010-Ohio-2 and *State v. Williams,* 124 Ohio St.3d 381, 922 N.E.2d 937, 2010-Ohio-147, the Ohio Supreme Court upheld its *Cabrales* rationale in this arena.

{¶100} In December of 2010, the Ohio Supreme Court expressly overruled *Rance* to the extent that *Rance* calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25. *State v. Johnson*, 2010-Ohio-6314, ¶44. When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. Id.

{¶101} Appellant was convicted of seven counts of theft as defined by R.C. 2913.02(A):

{¶102} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶103} "(1) Without the consent of the owner or person authorized to give consent;"

{¶104} R.C. 2913.51(A) defines receiving stolen property:

{¶105} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶106} This Court has previously found theft and receiving stolen property to be allied offenses of similar import where the same property is the subject of both offenses:

{¶107} "Under a *Cabrales* analysis, we find a defendant who steals an item will, however briefly, also receive and retain the item, and may likely eventually dispose of it as well. Whether the defendant keeps the item or not, his or her actions stem from the original intent to benefit from taking another's property." *State v. Slager*, Delaware App. No. No. 08 CAA 11 0067, 2010-Ohio-1797, ¶20.

{¶108} We similarly find under a *Johnson* analysis that considering appellant's conduct in this case, the offenses of receiving stolen property and theft were allied offenses. Each of the charges of receiving stolen property related to an item or items of property charged in the theft offenses. Having stolen the items, appellant also "received" the items within the definition of R.C. 2913.51.

{¶109} The State argues that any error is cured because the court sentenced appellant to concurrent terms of incarceration on each of the theft and receiving stolen property counts; therefore, appellant is not prejudiced by the failure to merge the convictions. However, the Ohio Supreme Court held in *State v. Whitfield*, 124 Ohio St.3d 319, 922 N.E.2d 122, 2010-Ohio-2, that upon guilty verdicts on allied offenses, the State must elect which of the offenses it chooses to seek sentencing for, and the court must accept the state's choice and merge the crimes into a single offense for purposes of sentencing. Id. at ¶24. Therefore, appellant could not be sentenced separately on

each count of theft and each count of receiving stolen property.  Rather, the State is required to elect on which offense it desires to seek sentencing.

{¶110} Appellant's fifth assignment of error is sustained, and the matter is remanded for the trial court to review merger of the offenses for sentencing regarding Counts 1, 2, 4, 5, 7, 8, 10, 12, 14, 15, 17, 18, 19, 20, 22, 23, and 24, as provided by the Ohio Supreme Court in *Whitfield,* supra.

{¶111} The judgment of the Delaware County Common Pleas Court is reversed and remanded for resentencing on the convictions for seven counts of theft and ten counts of receiving stolen property.  In all other respects, the judgment is affirmed.

By: Edwards, J.

Hoffman, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/r0216

[Cite as *State v. Fannin*, 2011-Ohio-3211.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                              :

                Plaintiff-Appellee           :

-vs-                                       :       JUDGMENT ENTRY

TOBIAS D. FANNIN                           :

           Defendant-Appellant          :       CASE NO. 10CAA030028

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed in part, and reversed and remanded in part. Costs assessed 50% to appellee and 50% to appellant.

_____

_____

_____

JUDGES