[Cite as *State v. Gibson*, 2011-Ohio-3213.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO | : | JUDGES: | |
|  | : | John W. Wise, P.J. | |
|  | : | Julie A. Edwards, J. | |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. | |
|  | : | | |
| -vs- | : | Case No. 10CAA070056 | |
|  | : | | |
|  | : | | |
| TODD N. GIBSON | : | O P I N I O N | |
| Defendant-Appellant | | | |

CHARACTER OF PROCEEDING:　　　　Criminal Appeal from Delaware
　　　　　　　　　　　　　　　　　　　　　　County Court of Common Pleas Case
　　　　　　　　　　　　　　　　　　　　　　No. 09CR-I-06-0326

JUDGMENT:　　　　　　　　　　　　　　Affirmed

DATE OF JUDGMENT ENTRY:　　　　　June 27, 2011

APPEARANCES:

For Plaintiff-Appellee　　　　　　　　　　For Defendant-Appellant

CAROL H. O'BRIEN　　　　　　　　　　WILLIAM T. CRAMER
Delaware County Prosecuting Attorney　　470 Olde Worthington Rd., Suite 200
　　　　　　　　　　　　　　　　　　　　　　Westerville, Ohio  43082

BY: MARIANNE T. HEMMETER
Assistant Prosecuting Attorney
140 N. Sandusky Street – 3rd Floor
Delaware, Ohio  43015

*Edwards, J.*

{¶1}   Appellant, Todd Gibson, appeals a judgment of the Delaware County Common Pleas Court convicting him of two counts of gross sexual imposition (R.C. 2907.05(A)(4)) and four counts of rape (R.C. 2907.02(A)(1)(b)).

## STATEMENT OF FACTS AND CASE

{¶2}   Joe Yontz and Athena Pribanic were married for a short time and had two children, J., born December 7, 2004, and T., born July 31, 2002.   After a difficult divorce, Athena was named the residential parent of the children.   She moved to Delaware County to attend school while Joe remained in Sandusky.   However, every weekend Athena returned to Sandusky to work in her father's restaurant and Joe had visitation with the children.   Joe did not know where Athena was living, just that she lived somewhere near Columbus.

{¶3}   Appellant and Athena began living together in Delaware County in 2008. Appellant watched the children while Athena attended school.   In late 2008, J. told her father that appellant kissed her on the mouth and demonstrated by sticking her tongue out.   J. also told her father that she had a secret.   Joe asked Athena about the kissing and Athena downplayed his concerns.   When Athena asked appellant about the kissing, appellant told her it was a lie.

{¶4}   For several months before J.'s disclosure, Joe noticed that J. was withdrawn.   In addition, he noticed that T. would fight when it was time to return home with his mother after weekend visits with Joe.

{¶5}   J. told Joe's new wife, Lisa, that appellant was her boyfriend.   Lisa also heard J. say that appellant kissed her on the mouth.   Lisa called Erie County Children's

Services in February of 2009, but they could not act on the information because Lisa did not have an address where the children were living.

{¶6} On May 17, 2009, Lisa's daughter Kayla was babysitting J. during a weekend visit at Joe's house. While Kayla was rubbing lotion on her leg, J. stated that appellant made her (J.) rub his "to-to" until lotion came out. Kayla immediately called her mother and Joe to report what J. told her. Joe drove to Athena's workplace and told her he was going to call the police.

{¶7} After Joe reported the allegations, Detective Christy Burke of the Delaware County Sheriff's Office made arrangements for both J. and T. to be interviewed and examined at Nationwide Children's Hospital Children's Advocacy Center (CAC).

{¶8} Paula Samms interviewed both children at CAC on May 27, 2009. During the interview J. stated that appellant kissed her on the mouth, put his mouth on her nipple, licked her vagina, put his face in her bottom, put his penis in her vagina and put his penis in her mouth. J. told Samms that she put her mouth on appellant's penis about ten times and it tasted like watermelon.

{¶9} T. told Samms that he saw appellant touch his sister's private parts and appellant told him to look at J. when she was naked.

{¶10} Based on the interview in which J. disclosed that appellant's penis tasted like watermelon, Detective Burke searched Athena's bedroom and found "sex tarts," which are flavored lubricants. Athena stored the sex tarts in her bedroom nightstand where appellant kept his condoms. At one time there was a watermelon sex tart in the

box, but it was missing when Burke searched the nightstand. Athena did not remember using the watermelon-flavored sex tart.

{¶11} Appellant was indicted by the Delaware County Grand Jury with five counts of rape and two counts of gross sexual imposition. The case proceeded to jury trial in the Delaware County Common Pleas Court.

{¶12} J. was five years old when she testified at trial. She told the jury that appellant touched her vagina, breasts and butt. She testified that appellant touched her vagina with his penis. She said that appellant put his penis in her vagina. She testified that appellant's penis felt hard and lotion came out of the middle and "spread." She testified that appellant touched her breasts with his mouth and her butt with his mouth, and that he touched her breasts and vagina with his fingers. She stated that appellant put his fingers inside her vagina and it hurt, but he would not stop when she told him to stop. She testified that all of these incidents occurred in her mother's bedroom, and that she told her mom and her whole family but the incidents did not stop.

{¶13} Appellant took a stipulated polygraph test and the results were admitted into evidence at trial. Cindy Erwin testified that appellant showed deception when he denied committing a sex act on J., when he denied putting his finger's in J.'s vagina, when he denied putting his penis in J.'s vagina, and when he denied putting his mouth on J.'s vagina.

{¶14} Following trial, the court granted appellant's Crim. R. 29 motion for acquittal as to one count of rape and submitted the remaining counts to the jury. Appellant was convicted on all remaining counts and sentenced to four consecutive terms of imprisonment of fifteen years to life for the rape convictions and two

consecutive terms of imprisonment of three years for the gross sexual imposition convictions.  He assigns the following errors on appeal:

{¶15} "I. DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE PROSECUTION ELICITED TESTIMONY RELATING TO INADMISSIBLE PRIOR BAD ACTS.

{¶16} "II. DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE PROSECUTION COMMITTED MISCONDUCT BY ELICITING EVIDENCE OF PRIOR BAD ACTS, ATTACKING THE DEFENDANT'S CHARACTER DURING CLOSING ARGUMENT, AND CITING FACTS NOT IN EVIDENCE DURING CLOSING ARGUMENT.

{¶17} "III. DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO THE PROSECUTION'S ATTACK ON DEFENDANT'S CHARACTER.

{¶18} "IV. THE CUMULATIVE IMPACT OF THE ALLEGED ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL."

I

{¶19} In his first assignment of error, appellant argues that the court erred in admitting Athena's testimony that she was afraid of appellant and kicked him out of the house :

{¶20} "Q. When had he, the defendant, moved out?

{¶21} "A. In April, the 20th I believe.

{¶22} "Q. Okay.  April 20th he's out of the house.

{¶23} "A. Yes.

{¶24} "Q. Why was he no longer living at the house?

{¶25} "A. We had our own problems.

{¶26} "Q. What were those problems?

{¶27} "A. He had mentioned to me a few times that he was thinking about killing A - -

{¶28} "MR. BIVENS: Objection.

{¶29} "THE COURT: Sustained.  Counsel, would you approach the side-bar?

{¶30} "(Thereupon a side-bar discussion was held on the record.)

{¶31} "THE COURT: Where are we going with this?

{¶32} "MS. HEMMETER: Originally she told me she was afraid, he made specific threats and she kicked him out.  I'm trying - -

{¶33} "THE COURT: Don't get into something we don't need to.

{¶34} "MS. HEMMETER: The kids didn't see this particular fight.

{¶35} "THE COURT: Very good.

{¶36} "(Thereupon the side-bar discussion concluded.)

{¶37} "BY MS. HEMMETER:

{¶38} "Q. Were you afraid of Todd?

{¶39} "A. Yes.

{¶40} "Q. And you eventually kicked him out of the house?

{¶41} "A. Yes." Tr. 413-415.

{¶42} Appellant concedes that he did not object to this evidence and we therefore must find plain error in order to reverse.  *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Crim.R. 52(B). In order to prevail under a plain error analysis,

appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long*, supra. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.

**{¶43}** Appellant argues that Athena's testimony violated Evid. R. 404(B):

**{¶44}** **"(B) Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶45}** Appellant argues in his brief that the jury was told that he tried to kill someone and that Athena was afraid of him. However, an objection to her statement that appellant mentioned that he was "thinking about killing a" was sustained, and her testimony was interrupted so the jury did not hear who or what he was thinking about killing. The parties had agreed prior to trial that specific acts of domestic violence and the existence of a protection order were inadmissible, and such evidence was not admitted.

**{¶46}** No evidence was admitted concerning specific other crimes, wrongs or acts. The only evidence that was admitted was that Athena was afraid of him and kicked him out. This evidence was not admitted to prove appellant's character in order to show that he acted in conformity therewith, but was admitted to explain why appellant was no longer living with Athena and the children in 2009.

{¶47} As the Eighth District explained when considering similar evidence of fear of the defendant by a witness:

{¶48} "We find that the evidence complained of is not 'other acts' as defined by Evid.R. 404(B). Defendant cites as other acts evidence Daniel Crawford's statement that he did not testify at defendant's previous trial because he was afraid of defendant's 'biker friends,' Dean Soke's (another of defendant's sons) statement that he had a poor relationship with defendant, and testimony that defendant's grandmother was the only person in the family who worked.

{¶49} The state did not offer evidence of defendant's family life in order to prove defendant's character and show that he acted in conformity therewith. The evidence did tend to explain why family members and other witnesses testified at trial, or refused to testify at defendant's previous trial. Strained family relations in this context are not 'bad acts' as contemplated by Evid.R. 404(B). *State v. Webb* (1994), 70 Ohio St.3d 325, 340, 638 N.E.2d 1023, 1036."

{¶50} *State v. Soke* (1995), 105 Ohio App.3d 226, 249, 663 N.E.2d 986.

{¶51} Further, appellant has not demonstrated that the result of the trial would have been different in the absence of this evidence.  J.'s testimony at trial was consistent with her earlier statements at CAC, which were recorded and played for the jury at trial.  There was evidence that appellant did not pass a polygraph test.  Further, J. testified that appellant's penis tasted like watermelon, and the State presented evidence that the watermelon "sex tart" was missing from a package in Athena's nightstand and Athena testified that she had not used it.

**{¶52}** The court did not commit plain error in admitting evidence that Athena kicked appellant out of her house because she was afraid of him. The first assignment of error is overruled.

II

**{¶53}** In his second assignment of error, appellant argues that the prosecutor committed misconduct in eliciting the testimony complained of in the first assignment of error and in comments made during closing argument.

**{¶54}** Appellant did not object to the testimony, nor did appellant object to the comments in closing argument, and we must therefore find plain error in order to reverse.

**{¶55}** For the reasons stated in Assignment of Error I, we find no plain error in the prosecutor eliciting the statement that Athena was afraid of appellant. Pursuant to the agreement of the parties, the prosecutor did not go into specific incidents of domestic violence between appellant and Athena, and limited the question to her state of mind concerning why she kicked appellant out of her home.

**{¶56}** We next address appellant's claim that the prosecutor committed misconduct in closing argument.

**{¶57}** Determining whether improper remarks constitute prosecutorial misconduct requires analysis as to (1) whether the remarks were improper and (2), if so, whether the remarks prejudicially affected the accused's substantial rights. *State v. Tenace* (2006), 109 Ohio St.3d 255, 847 N.E.2d 386, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 14 OBR 317. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455

U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. We will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. Treesh* (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749.

{¶58} Appellant first argues that the following characterization of appellant as a "no good lay about who is generally unlikeable" was misconduct:

{¶59} "Now during this period of time that we're talking about, and we reduced the indictment time so as to read July 31, 2008 to March 17, 2009. So during that period of time the defendant, Todd Gibson, was living with Athena and her two children by Joe and her one child by Todd. And they were living here in Delaware County, Ohio, at the Strawberry Hill Road address. And you heard Athena's testimony about when she moved into the apartment, the reason Todd's name was not on the lease was because Todd didn't move in with her, that Todd had his own apartment, until he got thrown out by the co-tenant. Only then did Todd kind of move in with her at the Strawberry Hill Road address.

{¶60} "And she told you a little bit about Todd's background and history. Todd was a truck driver, he got fired from this job, and then he worked at Kroger's, she didn't tell us how that job terminated or if he was still working there. And then he got thrown out of his apartment from his roommate.

{¶61} "So, anyway, Todd moves back in to her apartment, she's living with her three children here in Delaware County, Ohio, so that gives us jurisdiction. That happened here because [J.] told both, when she was interviewed, and you saw the

interview, that it happened at her apartment, it happened at mommy's room." Tr. 710-711.

{¶62} As to appellant's general claim of misconduct that the prosecutor attempted to portray appellant as a "no-good lay about," we find the prosecutor's comments were not improper. The prosecutor was making fair comment on the evidence concerning appellant's lack of a job and his living arrangements to demonstrate that appellant had unsupervised access to J. because he was at home while Athena was at work during the time period J. alleged he was committing sexual acts with her in her mother's bedroom.

{¶63} Appellant argues that the fact that he was fired from his job as a truck driver was not in evidence. The State concedes that this was an improper comment on a fact not in evidence. However, we find that while the comment was improper, appellant would have been found guilty even without the prosecutor stating that he had been fired from his last job. The court instructed the jury that arguments by counsel are not evidence. Tr. 707. J.'s testimony at trial was consistent with her earlier statements at CAC, which were recorded and played for the jury at trial. There was evidence that appellant did not pass a polygraph test. Further, J. testified that appellant's penis tasted like watermelon, and the State presented evidence that the watermelon "sex tart" was missing from a package in Athena's nightstand and Athena testified that she had not used it. The prosecutor's misstatement concerning appellant's termination from his trucking job did not change the outcome of this case.

{¶64} The second assignment of error is overruled.

III

{¶65} In his third assignment of error, appellant argues counsel was ineffective for failing to object to Athena's testimony that she was afraid of appellant (raised in assignments of error one and two) and for failing to object to the prosecutor's comment on facts not in evidence in closing argument (raised as prosecutorial misconduct in assignment of error two).

{¶66} A properly licensed attorney is presumed competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

{¶67} As discussed earlier in this opinion, appellant has not demonstrated that admission of Athena's testimony was error, as the evidence was not prohibited by Evid. R. 404(B). While the comment by the prosecutor was improper because there was no evidence that appellant was fired from his trucking job, for the reasons stated in the second assignment of error, appellant cannot demonstrate a reasonable probability of a change in the outcome had counsel objected. While the objection would most likely have been sustained, there was abundant evidence to support the convictions, as discussed in Assignment of Error Two above.

**{¶68}** The third assignment of error is overruled.

IV

**{¶69}** Appellant argues that he was denied a fair trial by the cumulative effect of the errors raised in Assignments of error one through three.

**{¶70}** Although violations of the Rules of Evidence during trial may singularly not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprived the defendant of the constitutional right to a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, ¶ 2 of the syllabus. The *DeMarco* case involved numerous violations of the hearsay rule, which the Supreme Court found cumulatively, resulted in prejudicial error. *Id.* at 196-197, 509 N.E.2d 1256. However, the doctrine is not applicable to cases where the court has not found multiple instances of harmless error. *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623, 1995-Ohio-168.

{¶71}  In the instant case, we have not found multiple instances of harmless error.  The doctrine of cumulative error therefore does not apply.

{¶72}  The fourth assignment of error is overruled.

{¶73}  The judgment of the Delaware County Common Pleas Court is affirmed.


By: Edwards, J.

Wise, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/r0504

[Cite as *State v. Gibson*, 2011-Ohio-3213.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                           :
                                        :
            Plaintiff-Appellee          :
                                        :
                                        :
-vs-                                    :        JUDGMENT ENTRY
                                        :
TODD N. GIBSON                          :
                                        :
            Defendant-Appellant         :        CASE NO. 10CAA070056


      For the reasons stated in our accompanying Memorandum-Opinion on file, the
judgment of the Delaware County Court of Common Pleas is affirmed.  Costs assessed
to appellant.


                                        _____

                                        _____

                                        _____
                                                      JUDGES